BOBENAL INVESTMENT, INC. v GIANT SUPER MARKETS, INC.

1. LANDLORD AND TENANT—COVENANTS—OPERATION OF BUSINESS— MINIMUM RENTAL.

A covenant that the lessee will operate its business in the leased premises throughout the full term of a lease under which the rental is computed as a percentage of gross sales with a minimum annual rental provided for is not implied where the minimum rental called for by the lease is not an insignificant, small or inadequate amount.

2. APPEAL AND ERROR—LANDLORD AND TENANT—COVENANT TO RE- PAIR—ACCEPTANCE OF BENEFITS—NON-COMPETITION COVENANT.

A trial court did not err in finding that a defendant had fully or substantially performed a covenant to repair damages con- tained in an agreement to cancel a lease and that the plaintiff, in accepting the benefits of the defendant's performance of certain repairs, had waived any right not to honor a covenant not to rent to a party in a competitive line of business con- tained in the agreement to cancel the lease where the record shows the plaintiff's decision to retile the floor of the premises had no relationship to flooding damage that occurred when the defendant vacated the premises, and that some repairs were made by the defendant after the flooding, and where the plaintiff made no complaints regarding the need for repairs

REFERENCES FOR POINTS IN HEADNOTES

[1] 49 Am Jur 2d, Landlord and Tenant § 519.
Construction and application of provision in lease under which landlord is to receive percentage of lessee's profits or receipts. 38 ALR2d 1113.
[2] 49 Am Jur 2d, Landlord and Tenant § 1005.
[3] 49 Am Jur 2d, Landlord and Tenant § 159.
[4] 49 Am Jur 2d, Landlord and Tenant §§ 844–849.
Rights and remedies of tenant upon landlord's breach of covenant to repair. 28 ALR2d 446.
[5] 49 Am Jur 2d, Landlord and Tenant § 226 *et seq.*
[6] 49 Am Jur 2d, Landlord and Tenant § 42.
[7] 54 Am Jur 2d, Monopolies, Restraints of Trade and Unfair Trade Practices § 443 *et seq.*

when the parties executed a final termination of lease agreement after the defendant had vacated the premises.

3. CONTRACTS—COVENANTS—DEPENDENT COVENANTS—INDEPENDENT COVENANTS—GUIDELINES.

The guidelines for determining whether covenants within a contract are dependent or independent are: (1) the intention of the parties, as evidenced by the contract language, subject matter and the object to be attained, (2) the inherent justice of the situation, (3) the relative materiality of the breached covenant, (4) the order of time of performance of the respective covenants, and (5) whether the breached covenant was only part of the consideration to be given and was compensable in damages and was incidental to the main purpose of the contract.

4. LANDLORD AND TENANT—CONTRACTS—COVENANT TO REPAIR— BREACHES—DAMAGES—COST OF REPAIRS—LOSS OF RENT.

A breach of a covenant to repair is compensable in damages equal to the cost of repairs plus the loss of rent during the time required to make the repairs.

5. CONTRACTS—CONTRACTS NOT TO ENGAGE IN BUSINESS—LEASE TERMINATION AGREEMENT—FUTURE USES—LANDLORD AND TENANT —STATUTES.

The statute regarding contracts not to engage in business does not prohibit a lease termination agreement which limits future uses of the leased premises (MCLA 445.761; MSA 28.61).

6. PROPERTY—OWNER—LESSEE—CONDITIONS ON TRANSFER—NON-COMPETITION—LANDLORD AND TENANT—COVENANT IN LEASE.

An owner or lessee of property has a near absolute right to determine how the property may be used and can retain a portion of that power after sale or surrender by imposing conditions on the transfer of the property; an agreement not to lease to a competing supermarket given in exchange for the surrender of a lease may be viewed as a reasonable provision to protect the lessee's interest.

7. MONOPOLIES—ANTI-TRUST—COMBINATIONS IN RESTRAINT OF TRADE —LEGITIMATE THREATS—STATUTES.

Michigan's original anti-trust statute and the criminal statute which prohibits combinations in restraint of trade are aimed at large scale agreements which would pose legitimate threats of monopoly (MCLA 445.701, 750.151; MSA 28.31, 28.348).

Appeal from Isabella, Paul F. O'Connell, J. Sub-

mitted June 15, 1977, at Lansing. (Docket No. 28882.) Decided October 10, 1977. Leave to appeal denied, 402 Mich 870.

Complaint by Bobenal Investment, Inc., for a declaratory judgment that an agreement between Bobenal and Giant Super Markets, Inc., which prohibits Bobenal from leasing premises formerly leased by Giant to a competing supermarket, is null and void. Giant filed a cross-complaint to enjoin Bobenal from violating the agreement. The agreement was held to be in full force and effect, Bobenal's complaint was dismissed and Giant's cross-complaint for an injunction was granted. Bobenal appeals. Affirmed.

*Fortino, Plaxton & Moskal,* for plaintiff.

*Lynch, Gallagher & Lynch,* for defendant.

Before: D. E. HOLBROOK, JR., P. J., and ALLEN and D. R. FREEMAN,* JJ.

ALLEN, J. Plaintiff filed suit for a declaratory judgment to declare null and void a certain agreement dated July 25, 1972, between the parties under which plaintiff was prohibited from leasing to a competing supermarket the space which defendant had formerly leased from plaintiff under a lease agreement dated December 5, 1962. Defendant filed a cross-complaint to enjoin plaintiff from leasing or permitting use of the space in question to a competing food supermarket. Following a nonjury trial, the trial judge issued a written opinion on March 10, 1976, holding that the July 25, 1972, agreement remained in full force and effect, dismissing plaintiff's complaint and grant-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ing defendant's cross-complaint for an injunction. Plaintiff appeals of right.

## I. Facts

Plaintiff is a Michigan corporation whose only business is that of constructing and leasing buildings. By lease dated December 5, 1962, plaintiff leased to defendant 15,000 square feet of the 45,-000 square foot Bobenal Building at the corner of Mission and Preston Streets in Mount Pleasant. The lease term was 15 years with two renewal options of 5 years each and rent was three-quarters of one percent of gross sales but with a minimum of $21,000 per year. The remaining 30,000 square feet of space was occupied by a Yankee Department Store under a lease from Bobenal.

During 1971, defendant commenced building its own shopping center located some two or three blocks south of the Bobenal Building and on the opposite side of Mission Street. The principal building of the new center contained 50,000 square feet, of which plaintiff commenced occupying 20,-000 square feet, and a department store the remaining 30,000 square feet. Nothing in the 1962 lease specifically precluded Giant from opening another store in Mount Pleasant though plaintiff contends that, by implication, Giant was precluded from such action.

After the new center opened, defendant continued operations in both locations but business at the Bobenal shopping center began to decline and the parties commenced negotiating with one another. The nature of these initial negotiations is disputed. Defendant contends it desired to keep stores at both sites on Mission Street but plaintiff claims defendant proposed to give up the grocery

option provided Bobenal would consent to use of the space for Giant's general offices—a proposal which plaintiff rejected. Be this as it may, negotiations continued, finally terminating in the agreement of July 25, 1972. This agreement cancels the lease dated December 5, 1962, and on which there remained approximately 5-1/2 years of the initial term and two renewal options of 5 years each. The salient provisions of this agreement read as follows:

"WHEREAS, the parties desire to terminate said lease and the First Party to vacate said premises without further liability for the rents due thereon after vacation;

"NOW, THEREFORE, it is hereby agreed that the said lease dated December 5, 1962, is terminated on the following terms and conditions:

1. That the First Party shall vacate said premises no later than 60 days from the date hereof.

2. That if First Party vacates the leased premises within said 60-day period, Second Party shall not lease or permit the use of, said leased premises, or that portion of the land above described which is occupied by the Yankee Department Store, or any part of said leased premises or land, as a food super market for a period of 10 years from the date hereof.

3. That First Party shall, at its own expense, remove all of its fixtures and equipment within said 60-day period and repair any damage done to the premises by such removal.

4. That First Party shall pay the minimum monthly rents due under the terms of said lease and proportionately to the date of vacation.

5. That the First Party shall furnish to Second Party a statement of gross receipts as per the terms of the lease and pay to Second Party any percentage rent due under said lease—the rent to be proportional for the proportions of the lease year the First Party has had possession.

6. That if First Party fails to vacate the leased

premises within said 60-day period, Second Party shall be free to lease to a food super market, and the above prohibition shall be void."

Within the 60-day period referred to above, defendant vacated the premises, taking with it all of its fixtures and equipment. However, during the course of the vacating, defendant removed a downspout which handled water from the roof and failed to replace it. That night—Friday, August 25, 1972—and the following morning a heavy rain fell, as a result of which water entered the building saturating the floors of both the Giant and the Yankee areas. The surplus water was quickly mopped and swept away by defendant's maintenance crew and the floor area was scrubbed and cleaned by a professional janitorial contractor. Nevertheless, some tile was loosened or lost, though the amount of the loss was disputed. By letter dated September 15, 1972, plaintiff notified defendant that the water had caused considerable damage, that plaintiff would make the repairs and would look to defendant for payment. Five days later, by letter dated September 20, defendant informed plaintiff that it had vacated the premises and, except for normal wear and tear, denied any responsibility for alleged damage to the building. In turn, by letter dated October 17, Bobenal acknowledged receipt of Giant's letter of September 20, and stated that Bobenal would make the repairs and replacements to the floor and submit the cost to defendant.[1]

Finally, on October 30, 1972, the parties exe-

---

[1] " * * * In view of your position, we have had no alternative but to proceed with the repair and replacement of the floor *and we will submit the cost of the same to you and expect payment.* If no payment is forthcoming, then suit will be necessary." (Emphasis supplied.)

cuted a simple one-paragraph termination of lease agreement reading as follows:

"This is to certify that that certain Lease Agreement dated December 5, 1962, covering part of a building on property described as: * * * has been terminated, and the second party has taken possession of the premises in accordance with the terms of a certain Agreement dated July 25, 1972."

Plaintiff thereafter leased the vacated space to Zodys who, as successor to Yankee, took over the entire Bobenal Building. No claim for damages was ever made by Bobenal nor was a bill sent for reimbursement for the cost and installation of the tile or other repairs.[2] In fact, nothing further on the subject transpired between the parties until Zodys went bankrupt shortly before Christmas 1974, and defendant heard that plaintiff was negotiating a lease with Kroger for the vacated space. On May 13, 1975, defendant wrote plaintiff directing attention to plaintiff's covenant of July 25, 1972, not to lease to a supermarket for 10 years. On May 21, 1975, plaintiff replied, stating that inasmuch as Giant had not made the repairs for damage caused when defendant vacated the space, "the entire agreement is vitiated" and plaintiff would proceed "as if the writing of July 25, 1972, did not exist". Shortly thereafter, plaintiff filed its complaint for a declaratory judgment determining that the agreement of July 25, 1972, was null and void. Defendant answered and filed a counterclaim to enjoin Bobenal from using or permitting the use of the subject premises for supermarket purposes.

## II. Statement of Issues

Four basic issues emerge from the factual situa-

---

[2] At trial, plaintiff did introduce into evidence invoices showing $2,956.68 paid for new tile and $891.25 for the installation thereof.

tion described: (1) Did Giant breach the 1962 lease by opening up another store across the street? (2) Did the trial court err in finding that Giant had fully or substantially performed the covenant to repair the premises it vacated and that Bobenal, in accepting the benefits of Giant's performance, waived any right to refuse to honor the noncompetition covenant? (3) Was Giant's covenant to repair as set forth in § 3 of the agreement independent of Bobenal's covenant not to lease to a competing food market as set forth in § 2 of the agreement? (4) Was the agreement of July 25, 1972, void under the statute prohibiting contracts by which any person agrees not to engage in any business, MCLA 445.761; MSA 28.61?

### III. Discussion of Issues

(1) *Did Giant breach the basic lease when it opened up a second shopping center and occupied another store across the street?* This issue was not addressed by the trial court and is raised for the first time on appeal. Citing *Slidell Investment Co, Inc v City Products Corp,* 202 So 2d 323 (La App, 1967), *Lippman v Sears, Roebuck & Co,* 44 Cal 2d 136; 280 P2d 775 (1955), *Professional Building of Eureka, Inc v Anita Frocks, Inc,* 178 Cal App 2d 276; 2 Cal Rptr 914 (1960), and *Simhawk Corp v Egler,* 52 Ill App 2d 449; 202 NE2d 49 (1964), plaintiff argues that even though the 1962 lease contained no express provision that Giant must continue to do business in the space leased, the courts today find an implied covenant within a lease that the lessee will continue business in the premises leased for the full lease term. Where such a covenant is found, express or implied, the lessee may not close down the leased shop (or alternatively move to another shop) and pay the

minimum rent, but must continue to operate the business in the space first leased. Plaintiff states the rule too broadly. Absent evidence that the minimum rental is insignificant the courts generally do not imply a covenant to continue operations. 2 Powell, Real Property, § 242[2], pp 372.27–372.28, 372.31(14), 372.32(8).[3] The cases cited by plaintiff, *supra,* are distinguishable since, unlike the case before us, the minimum rent was either small or obviously inadequate ($284 per month *Lippman;* $250 per month, *Simhawk).* Factually more like the instant case are *Kroger Co v Bonny Corp,* 134 Ga App 834; 216 SE2d 341 (1975), and *Stop & Shop, Inc v Ganem,* 347 Mass 697; 200 NE2d 248 (1964).

In *Kroger,* defendant, owner of a shopping center, entered into a 15-year lease with Kroger in December 1973. Rental was $2,253 per month plus 1 percent of sales in excess of $2,704,000 per year. In December 1973, when two years still remained on the basic term, Kroger closed its store, opening another in a new shopping center one-and-one-half miles away but continued to pay the base rent and sought to obtain a sub-tenant for the vacated premises. During the first 12 years, sales were insufficient to invoke the percentage rent but, in the last (13th) year, increasing sales yielded $4,688.73 above the stipulated minimum rent. Claiming that the court should imply a covenant that the tenant had a duty to continue operations, the lessor sued for damages and for an injunction against allowing Kroger to vacate the store pro-

---

[3] "Of late, courts have proved more willing to imply a covenant to operate in percentage lease situations. Originally, it was held that no covenant would be implied where the lease contained a stated, guaranteed minimum rental. This absolutist position was subsequently modified to the extent that a covenant to operate could be implied if the minimum rental fixed by the lease was insubstantial." 2 Powell, Real Property, *supra,* at 372.27.

vided it continued to pay the minimum rent. The
court rejected plaintiff's contention stating:

"The general rule is, as there abstracted from *Cous-
ins Invest. Co v Hastings Clothing Co*, 45 Cal App 2d
141; 113 P2d 878 (1941), and *Masciotra v Harlow*, 105
Cal App 2d 376; 233 P2d 586 (1951), that 'covenants
would be implied only where the implication must arise
from the language used or was indispensable to effectu-
ate the intention of the parties, and that *when the
rental to be received under a lease is based on a
percentage of the gross receipts of the business, with a
substantial minimum,* there is no implied covenant that
the lessee will operate its business in the leased prem-
ises throughout the term of the lease.' 38 ALR2d Anno,
pp. 1115, 1116." (Emphasis supplied.) 134 Ga App at
838–839.

In *Stop & Shop, Inc*, the lessee was a supermarket
under a 13-1/2 year lease with a minimum rental
of $22,000 a year and a further rent of 1-1/4
percent of gross sales exceeding a certain amount.
Lessee continued operating the business for nine
years but then proposed to cease operations but
continue to pay the basic rent. During the period
of occupancy the lessee had opened two competing
grocery markets, one within 1/2 mile and the
other within one mile of the leased premises. The
court refused to rule against the lessee by imply-
ing a covenant to continue operations. Further,
the court based its opinion on the substantial
minimum rental of $22,000, and distinguished
*Lippman* and *Anita Frocks* as cases where the
minimum rental was not substantial. In the case
before us, there is nothing in the record to indicate
that $21,000 a year minimum rental was unsub-
stantial. Only in the last two years of defendant's
10-year occupancy were sales sufficient to invoke
the percentage rent. To us, this suggests that the

basic rent was not unsubstantial. Accordingly, we find no error on this issue.

(2) *Did the trial court err in finding that Giant had fully or substantially performed the covenant to repair and that Bobenal, in accepting the benefits of Giant's performance, waived any right not to honor the non-competition covenant?* Plaintiff claims that the trial court did not look closely at the testimony concerning the condition of the tile after the flooding and therefore erred in finding that the defendant had fully or substantially performed the agreement of July 25, 1972. We totally disagree. The record discloses that within two days, defendant mopped and swept away the water, then promptly followed up by hiring a reputable janitorial firm to clean the floors. No complaint as to the condition of the floor or the necessity of purchasing new tiles was made at the time. No complaint was made October 30, 1972, when the parties executed the termination of lease agreement. In fact, no complaint was made for the following two-and-one-half years and no demands for payment were pressed against the defendant. Not until Zodys went bankrupt did plaintiff assert that defendant had failed to abide by the agreement of July 25, 1972. However, our determination that defendant did at least substantially perform is based on more than Bobenal's long delay in advancing the claim. We predicate our decision on a full reading of the record which quite convincingly shows to us that the decision to retile the entire floor was made not because of water damage but because of a combination of factors including Zodys desire to have new tile, and the presence of marks and lines resulting from normal wear and tear or showing the location of check-out counters, gondolas and other heavy equipment. In addition,

there were extensive places—under the wall dividing Giant from Zodys and refrigerator trenches— where no tile had been laid.[4] None of these factors which led to a decision to retile had any relationship to the flooding which occurred when defendant vacated the premises. We find no error on this issue.[5]

(3) *Was defendant's covenant to repair, contained in the lease termination agreement, independent of plaintiff's covenant not to compete?* Volume 17A CJS, Contracts, § 344, pp 330–336 identifies the guidelines for determining whether covenants within a contract are dependent or independent as (1) The intention of the parties, as evidenced by the contract language, subject matter and object to be attained; (2) the inherent justice of the situation; (3) the relative materiality of the breached covenant; (4) order of time of performance of the respective covenants; (5) whether the breached covenant was only part of the consideration to be given and was compensable in damages and was incidental to the main purpose of the contract. Application of these guidelines to. the situation disclosed in the transcript persuades us that the trial court correctly determined that the

---

[4] According to the record, only 10,000 square feet of the 15,000 square feet occupied by Giant were tiled. When Zodys expanded into the former Giant space the entire area was tiled.

[5] Our holding that defendant did substantially perform makes it unnecessary to discuss the second part of the issue raised, *viz:*—did plaintiff waive its right to refuse to honor the non-competition covenant. We would be inclined to hold that the October 30, 1972, document—apparently drafted by the plaintiff's attorneys—waived any claim that the defendant had breached the July 25, 1972, termination agreement. The July agreement provided that the lease would be terminated on the happening of several conditions, including satisfactory repair of the premises by the defendant. The October 30 document stated that the lease had been terminated "in accordance with the terms of a certain Agreement dated July 25, 1972". The plaintiff was aware of the extent of the water damage when it signed the October 30 document.

covenants were independent. Thus, assuming, *arguendo,* that Giant breached its covenant to repair, such breach does not release plaintiff from its covenant to not lease to a supermarket for 10 years.

The contractual language specifically ties the lessee's obligation to vacate within 60 days to the lessor's obligation not to lease to a competitor. This appears in paragraph 2 and again in paragraph 6. The obligation to repair stands separate and alone in paragraph 3. Inherent justice weighs in the lessee's favor because of plaintiff's extended delay on notifying defendant it had somehow breached the agreement. Had plaintiff made this claim in October when the termination of lease document was presented for signature the defendant would not have signed or, alternately, would have resolved the conflict at that time. Historically, a breach of a covenant to repair is compensable in damages. Anno: *Measure and Items of Damages for Lessee's Breach of Covenant as to Repairs,* 80 ALR2d 983. Damages are recoverable equal to the cost of repairs, *National Bank of Detroit v Voigt Estate,* 357 Mich 647; 99 NW2d 504 (1959), plus loss of rent during the time required to make the repairs. Anno, *supra,* § 21, pp 1031–1032. Responding to questions by the Court, witnesses for the plaintiff clearly stated that plaintiff's primary concern was that Giant vacate the building, and not that repairs be completed by September 25, 1972. Finally, the two covenants in question were not to be performed concurrently, a factor which weighs strongly in favor of finding the covenants independent. 6 RCL 860. We find no error in the trial court's conclusion of law that the covenants in issue were independent of one another.

*(4) Is the lessor's covenant not to rent the premises for supermarket purposes for ten years in violation of 1905 PA 329 as amended by 1917 PA 171 (MCLA 445.761, 445.766; MSA 28.61, 28.66)?* At oral argument the main thrust of plaintiff's claim of error was directed to this issue. The entire building presently stands vacant and unrented, manacled from rental, according to counsel for plaintiff, by the covenant contained in the agreement of July 25, 1972, that for a period of ten years from the date of said agreement no portion of the entire building—either the 15,000 square feet then occupied by Giant Super Markets, Inc., or the 30,000 occupied by Yankee-Zodys— could be leased to or used as a food supermarket.[6] This covenant, says plaintiff, is in violation of MCLA 445.761, 445.766; MSA 28.61, 28.66, which read as follows:

"Sec. 1. All agreements and contracts by which any person, co-partnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void."

"Sec. 6. This act shall not apply to any contract mentioned in this act, nor in restraint of trade where the only object of restraint imposed by the contract is to protect the vendee, or transferee, of a trade pursuit, avocation, profession or business, or the good will thereof, sold and transferred for a valuable consideration in good faith, and without any intent to create, build up, establish or maintain a monopoly; nor to any contract of employment under which the employer

---

[6] In response to this argument, defendant's counsel notes that nothing in the agreement prohibits the building from being rented to non-supermarket tenants and that the building remains vacant only because plaintiff has an offer from a supermarket concern which plaintiff wishes to accept.

furnishes or discloses to the employe a list of customers or patrons, commonly called a route list, within certain territory in which such employe is to work, in which contract the employe agrees not to perform similar services in such territory for himself or another engaged in a like or competing line of business for a period of 90 days after the termination of such contract or services."

We agree with the plaintiff that a superficial reading of the quoted provisions would lead to the conclusion that the agreement in the present case is barred by § 1 and not excepted by § 6. But the Supreme Court has reached just the opposite conclusion and we are bound to follow that holding.

In *Gasses v Razk,* 219 Mich 500; 189 NW 37 (1922), the plaintiff leased a building for use as a poolroom. During the term of the lease, the defendant landlord persuaded the plaintiff to surrender her leasehold. Part of the consideration for the surrender was the landlord's promise that he would not allow another poolroom to operate on the premises until after the cancelled lease would have expired according to its terms. When the landlord breached his promise, the plaintiff sued and won an injunction against operation of a poolroom in the building. On appeal, the Supreme Court affirmed the lower court order and expressly held that MCLA 445.761; MSA 28.61 did not prohibit a termination agreement which limited future uses of the leased premises. The Court expressly noted that the agreement was designed to protect an established clientele and did not threaten to create a monopoly of the poolroom business in the community. Similarly, we see no danger that the agreement in the present case will tend to create a monopoly of the supermarket business in Mount Pleasant.

The *Gasses* Court reasoned that an owner or lessee of property had a near absolute right to determine how the property may be used and can retain a portion of that power after sale or surrender by imposing conditions on the transfer. Plaintiff's attorney argues that *Gasses* is no longer controlling since it was based on policy considerations which are no longer controlling. The advent of the modern shopping center with its sophisticated market and intense rivalries, counsel claims, demands a modification of *Gasses.* Even if we agreed with this argument, we could do no more than advise counsel to ask the Supreme Court to overrule its 1922 decision. For the present, we are bound to follow that holding. Next, plaintiff contends that if *Gasses* is controlling it controls only to preclude rental to a competing food chain for the 15,000 square feet formerly occupied by the defendant but would not preclude rental for supermarket purposes of the remaining 30,000 square feet formerly occupied by Yankee-Zodys. The argument is ingenious and technically correct. Yet we must disagree. Article XXX, Section 1, of the lease dated December 5, 1962, gave the tenant veto power over who might occupy the adjoining space.[7] Thus, defendant had as much control of the occupancy of all 45,000 square feet as did the lessee in *Gasses* where the Supreme Court said:

"In November, 1920, when defendant requested plaintiff to surrender the lease she was in possession and entitled to the possession of the store for 25 months. She could grant or refuse his request. She had absolute

---

[7] "The landlord agrees that they will not use or permit the property owned by them which adjoins the demised premises to be used for a general or discount department store or variety or limited price store without the approval of the lessee. *(or any other stores)".* (Emphasis supplied.) The portion underlined was added in handwriting and initialed by the parties.

control of the occupancy of the store for 25 months. If she chose she could consent to surrender her rights upon condition that the premises should not be used for a pool room during the balance of her lease. She had the same right to determine the kind of business that should be carried on in the store during the 25 months as defendant had when he leased it to her. She finally did consent on that condition and defendant promised in writing that he would accept the possession of *the premises* upon that condition." (Emphasis supplied.) 219 Mich at 502.

Even without the provision appearing in Article XXX, Section 1, the realities of the situation, where two separate businesses are operating in one building, made it only natural for defendant to insist that the restriction as to future leases cover the entire premises. Under these circumstances we view the Bobenal agreement not to lease as a reasonable provision to protect Giant's interest in exchange for surrendering its lease.

The plaintiff also argues that the agreement should be voided by MCLA 445.701; MSA 28.31, Michigan's original anti-trust statute, or MCLA 750.151; MSA 28.348, a criminal statute which prohibits combinations in restraint of trade. We reject application of both statutes since they appear aimed at larger scale agreements which would pose legitimate threats of monopoly. If the narrowly targeted 1905 PA 329, *supra,* is not applicable to the present case, then neither of the other two statutes should be applied. Plaintiff's invocation of the criminal statute appears inconsistent in light of plaintiff's proposed interpretation of the 1962 lease—an interpretation rejected by us in Section III(1) of this opinion. If we had agreed that the lease prohibited the defendant from opening its second store, both plaintiff and defendant would have been subject to criminal

prosecution under the plaintiff's interpretation of MCLA 750.151; MSA 28.348.

Finally, the plaintiff argues that the July 25, 1972, agreement should be declared void under common-law principles designed to enforce Michigan's public policy of discouraging agreements in restraint of trade. *Gasses v Razk, supra,* requires rejection of this argument. If the Supreme Court declines to apply a specific statute, it is not likely to apply a vague public policy. See also *Staebler-Kempf Oil Co v Mac's Auto Mart, Inc,* 329 Mich 351; 45 NW2d 316 (1951), and *Sun Oil Co v Trent Auto Wash, Inc,* 379 Mich 182; 150 NW2d 818 (1967).

## IV. Conclusion

The judgment entered by the trial court is affirmed.