643 P.2d 1079

Arlon L. BASTIAN and Una Bastian, husband and wife, Plaintiffs-Respondents-Cross Appellants,

v.

ALBERTSON'S, INC., a Nevada corporation, Defendant-Appellant-Cross Respondent.

No. 13420.

Court of Appeals of Idaho.

April 6, 1982.

Robert L. Miller, Boise, for defendant-appellant-cross respondent.

Lloyd J. Webb of Webb, Burton, Carlson, Pedersen & Paine, Twin Falls, for plaintiffs-respondents-cross appellants.

SWANSTROM, Judge.

This is an action for breach of a lease agreement covering a building and premises in Twin Falls, Idaho. The trial court found that Albertson's, the lessee, breached an implied covenant to pay reasonable rent when it quit operating a supermarket on the leased premises and did not assign the lease or sublet the property. We affirm.

In 1948, Mr. and Mrs. Bastian leased the premises to Albertson's for use as a grocery store. In 1961 the leased building was destroyed by fire. The parties entered into extensive renegotiations of the existing lease, which would not have expired until 1968. Lessors were then receiving $1,000 per month under the lease, a figure they considered grossly inadequate. They took the position that they had no obligation to rebuild the store. Lessee insisted that the store be rebuilt and that the rent continue at $1,000 per month for the remaining years of the lease. In compromise, the parties "hammered out" a new lease agreement. Both parties agreed to contribute to the cost of a new building specifically designed and built to lessee's requirements. The new lease agreement of 1961 gave lessee the benefit of a flat $1,000 monthly rental until December 17, 1968, when the old lease would have expired. However, the new lease provided that lessee would have the right to renew the lease for an additional ten year period after 1968, for $1,000 per month or a percentage of gross retail sales, whichever was greater.

Lessee constructed the new building at a cost of between $140,000 and $150,000. Lessors contributed $90,000 to the cost. Upon the completion of the building, lessee resumed operation of a grocery supermarket. The lease was renewed for the ten year period in 1968. Lessee continued to operate a grocery supermarket on the leased premises, paying the percentage rental required by the lease each year, until October 23, 1976. On that date, lessee closed the store and opened a new store nearby.

Lessee had the right under the lease agreement to assign the lease or sublet the property. Additionally, lessee had the right to remove fixtures and shelving from the leased premises. Upon ceasing the supermarket operation on the property the lessee removed fixtures and shelving but did not sublet the property or assign the lease. Although lessors offered to take the property back and relieve lessee of its rental obligation, lessee refused this offer. Lessee maintained possession of the property throughout the remaining period of the lease, pay-

ing lessors the minimum rental of $1,000 per month.

Before the lease expired, the lessors brought this suit to enjoin the lessee from ceasing its business operations there. Lessors claimed that the lease contained an implied covenant to remain in business on the premises. No injunction was entered and lessee discontinued its business, leaving the store vacant, but did not abandon the premises. A bifurcated trial was held to determine liability and damages on the claimed breach of the lease. The trial court determined that, although there was no implied covenant requiring the lessee to operate a grocery supermarket during the entire term of the lease, the contract contained an implied covenant to pay a reasonable and adequate rental for the property should the lessee choose to discontinue business but not to sublet the property.

The first issue is whether the trial court erred in determining that there was an implied covenant to pay a reasonable and adequate rent from October 23, 1976, when lessee discontinued operation of its supermarket, to December 17, 1978, when the lease ended. A second issue is whether the trial court erred in refusing to find an implied covenant, on the part of the lessee, to continue operating a supermarket through the entire term of the lease.

The applicable rental provisions in the 1961 lease for the renewal period after December 17, 1968, are as follows:

[F]or said renewal term of ten (10) years herein provided for, the monthly rental shall be One Thousand Dollars ($1,000.00) per month for and throughout said ten (10) year renewal period, and provided further that the Lessee shall pay to the Lessors additional rent as hereinafter set forth.

The Lessee agrees that it shall pay to the Lessors during the ten (10) year renewal term of this Lease, if the same is renewed, the annual minimum rent as stipulated in the next preceding paragraph or an amount equal to one and one-half percent (1½%) of Lessee's gross retail sales computed on a yearly basis, whichever shall be greater for the "leasing year."

■ Following trial on the liability issues the trial court entered the following finding:

V. Although the 1961 Lease did not require the [lessee] to obtain the consent of the [lessors] to a change in or abandonment of the use of the real property, the Lease provisions contained in the 1961 Lease relating to the payment of rent by the [lessee] were not expressly made applicable to a situation where the [lessee] ceased to use the real property for a supermarket and elected not to assign the Lease or sublet the real property for another use.

After finding that there were no express rental provisions in the lease applicable to the non-use of the property by lessee for a supermarket, the trial court admitted parol evidence to determine what the parties intended in 1961 when they were negotiating this lease. The court then found from this evidence, and from the lease, that the parties had not

arrived at any agreement or had a mutually agreed intent or understanding as to the amount of rent to be paid by [lessee] to the [lessors] if [lessee] discontinued the use of the real property for a supermarket and elected not to assign the Lease or sublet the real property for another use.

The court further found that in such an event the sum of $1,000 per month "does not represent reasonable and adequate rental for the real property...." These findings by the trial court are well supported by substantial, though conflicting, evidence and will not be disturbed on appeal. *Cougar Bay Co., Inc. v. Bristol*, 100 Idaho 380, 383, 597 P.2d 1070, 1073 (1979).

■ Lessee contends that there can be no implied covenant where the parties have entered into arms' length negotiations and produced a written agreement. Our Supreme Court in *Archer v. Mountain Fuel Supply Co.*, 102 Idaho 852 at 855, 642 P.2d 943 (1982) held that, where a contract contains an express statement that no covenants other than those actually contained in

the contract were made between the parties, a claim that an implied-in-fact covenant exists will not prevail. The provision in the contract in *Archer* unequivocally stated that "there are no rights, promises, representations, warranties, understandings, agreements, or obligations between the parties not expressed. . . ." *Id.* In contrast the contract between the parties here merely provides that the contract governing the rights of the parties prior to the fire "shall merge into this instrument and this lease agreement shall govern as the sole agreement between the parties. . . ." Although this provision could be read to preclude, under *Archer*, an implied covenant, we do not feel it adequately accomplishes this purpose. The language is equivocal as to its purpose. The paragraph in question is entitled "Merger Of Existing Lease." If the language was intended to fulfill the dual purpose of precluding implied covenants, it fails to do so in a sufficiently clear manner. We do not find that the intensity of the negotiations concerning this lease precludes a finding of an implied covenant. *See also Werry v. Phillips Petroleum Co.*, 97 Idaho 130, 540 P.2d 792 (1975).

■ In *Archer* the court said that terms are to be implied in a contract, "not because they are reasonable, but because they are necessarily involved in the contractual relationship so that the parties must have intended them and have only failed to express them because of sheer inadvertence or because they are too obvious to need expression." 102 Idaho at 857, 642 P.2d 943. We feel this implied covenant falls into the category of being "too obvious to need expression." In *Slidel Investment Co. v. City Products Corp.*, 202 So.2d 323 (La.App.1967) *cert. denied*, 251 La. 387, 204 So.2d 572, the court found that where a lessee is aware that lessor has constructed a building for the purposes of the lessee, the lease provides for a fixed annual rental plus a percentage of gross sales in excess of a stipulated figure, and the lease protects the lessee against competition within a certain number of feet, the obligation of the lessee to continue operations is implicit in the lease. While we note that the lease at bar does not contain a protection against competition and the rental is based on a fixed minimum or a percentage of gross sales, whichever is greater, and not a fixed minimum plus a percentage of gross sales over a certain amount, we recognize *Slidel* for its basic principle: Where it is clear that an agreement would not have been entered into but for the expectation that percentage rentals would be received, a trial court can properly find an implied covenant. This is what the trial court did here.

■ Lessors asked the trial court to find an implied covenant on the part of the lessee to continue in operation throughout the lease period. However, in the face of express provisions in the contract, allowing lessee to sublease the premises and to remove fixtures from the premises, such a covenant could not be implied. *Kroger Company v. Bonny Corp.*, 134 Ga.App. 834, 216 S.E.2d 341 (1975); *Williams v. Safeway Stores, Inc.*, 198 Kan. 331, 424 P.2d 541 (1967); *Lowe's of Shelby, Inc. v. Hunt*, 30 N.C.App. 84, 226 S.E.2d 232 (1976) cert. denied, 290 N.C. 662, 228 S.E.2d 452; *Brown v. Safeway Stores, Inc.*, 94 Wash.2d 359, 617 P.2d 704 (1980); *Rapids Associates v. Shopko Stores, Inc.*, 96 Wis.2d 516, 292 N.W.2d 668 (App.1980). This leaves us with the question of whether a certain rental can be implied, when lessee ceases doing business but declines to sublease the premises.

■ The major prerequisite for a finding of an implied covenant in a percentage rental agreement is that the stipulated minimum rental must not be substantial consideration. *See Archer v. Mountain Fuel Supply Co., supra*, 102 Idaho at 852, 642 P.2d 943; *Professional Building of Eureka v. Anita Frocks, Inc.*, 178 Cal.App.2d 276, 2 Cal.Rptr. 914 (1960); *Lippman v. Sears Roebuck & Co.*, 44 Cal.2d 136, 280 P.2d 775 (1955); *Masciotra v. Harlow*, 105 Cal.App.3d 376, 233 P.2d 586 (1951); *Kroger v. Bonny Corp., supra; Stop & Shop, Inc. v. Ganem*, 347 Mass. 697, 200 N.E.2d 248 (1964); *PBJ Company, Inc. v. Ben Duthler, Inc.*, 89 Mich. App. 767, 282 N.W.2d 216 (1979); *Bobenal Investment Inc. v. Giant Super Markets,*

*Inc.*, 79 Mich.App. 31, 260 N.W.2d 915 (1977); *Crestwood Plaza, Inc. v. Kroger Co.*, 520 S.W.2d 93 (Mo.App.1974); *Kretch v. Stark*, 193 N.E.2d 307 (Ohio Com.Pl.1962); *Brown v. Safeway, supra.* Parol evidence is properly admitted to determine whether minimum rentals are substantial. *Werry v. Phillips Petroleum Co.*, 97 Idaho 130, 135, 540 P.2d 792, 797 (1975); *Anita Frocks, Inc.*, 178 Ca.App.2d at 278–79, 2 Cal.Rptr. at 916; *Lippman*, 280 P.2d at 780–81; *PBJ Company*, 282 N.W.2d at 218. The burden of showing a disparity between the fixed minimum rent and fair rental value sufficient to furnish grounds for implying a covenant is on the lessor. *Stop & Shop Inc.*, 200 N.E.2d at 252.

*Lippman* was a case factually in tune with the present case. In both cases the lessee was in possession of the premises when fire destroyed the building. In both cases, after extensive negotiations, the parties entered into a second lease, where the lessee agreed to a minimum monthly rental equal to the monthly rental in the first lease. In both cases this minimum rent was agreed to only in exchange for the addition of an agreement to pay a percentage of gross sales. In both cases there was testimony that the "basic" rent was a minimal sum to take care of fixed expenses and was not accepted as adequate rental. The lessor's profit, in both instances, was expected to be gained through the percentage of sales provision. The lease in *Lippman* contained a provision that, if lessee sublet the premises or assigned the lease, lessee would be obligated to pay "the average monthly rental paid ... during the twelve months' period last preceding such assignment or subletting, but in no event shall such monthly rental be less than" the minimum monthly rental. Another clause provided that if the lessee abandoned the leased premises it would pay "as damages" the equivalent of "the rent herein reserved."

The term of the lease in *Lippman* was ten years. After operating a retail sales business in the building for several years and paying both "minimum monthly payments" and "additional rent," the lessee, Sears, transferred its sales business to another lo-

cation and used the Lippman premises solely for the storage of merchandise. Only "minimum monthly payments" were made during 1950, the final year of the term, and the lessor sued to recover "additional rent" for that year.

In *Lippman* the trial court found that the minimum monthly rent "was intended to be and was, in fact, a nominal rental and was not a substantial or adequate minimum rental." The trial court in *Lippman* also considered extrinsic evidence concerning the negotiations of the parties at the time that the lease was executed. The court found an implied covenant in the lease that, in the event Sears did not occupy the premises for the sale of general merchandise but used the premises for the storage of merchandise, it was to pay lessor a monthly rental equivalent to the average monthly rental it had paid for the preceding twelve months.

When *Lippman* was appealed, the Supreme Court of California said:

> [A] finding that, within the contemplation of the parties, $285 per month was not a substantial and adequate minimum rent to be paid in lieu of a percentage of the sales is a sufficient basis for a determination that Sears impliedly covenanted to use the demised premises for the sale of merchandise during the entire term of the lease.

280 P.2d at 781.

Since the parties had made specific provisions in the *Lippman* lease that the rental (or damages) would be the average of the preceding twelve months rental in the event lessee assigned or subleased or abandoned the premises, the California Supreme Court agreed this was a proper measure of damages to apply where Sears had abandoned "the integral purpose for which the lease was made." *Id.*

Here, as in *Lippman*, the parties failed to explicitly state in the lease what the rental would be if the lessee ceased using the premises for the sale of general merchandise. In *Lippman* and in this case the minimum monthly rental figures were

found not to be an adequate and substantial rental. Unlike *Lippman* the parties here failed to set forth any guidelines for determining an adequate and substantial rental in such circumstances.

The trial court here correctly found that, although the express language of the lease precluded an implied covenant to continue its merchandising business on the premises, there was an implied covenant—to use the court's words—that lessee would pay a "reasonable and adequate rental amount in the event of a discontinuance of operation of the grocery supermarket."

Lessee argues that *Williams v. Safeway Stores Inc.*, 198 Kan. 331, 424 P.2d 541 (1967) supports a reversal of the trial court in this case. We disagree. In *Williams* the lessors asked the court to imply a covenant forbidding the lessee from subleasing the premises to any sublessee who did not have minimum sales sufficient to generate additional rent under the percentage rental agreement. However, the lease agreement provided that the lessee could sublease and placed no significant restrictions on this right. The court found the provision covering subleases was an express covenant on that subject matter and precluded any implied covenant of a different or contradictory nature. In the case at bar there is no express covenant specifying what the rent would be if lessee chose to vacate the premises but declined to sublease.

The covenant implied by the trial court in this case does not touch upon the situation where lessee might have chosen to assign its lease or sublet the premises to a non-sales oriented sublessee. The occurrence of that eventuality is specifically provided for in the lease agreement. The covenant implied here only fills the void left by the parties as to what was to occur if the lessee quit its sales operation; yet did not assign or sublet. Therefore, *Williams* is inapposite to the facts here.

Lessee argues that a covenant should not be implied when it would be vague, uncertain, impracticable, and impossible to determine. Without adopting this argument as the law of this jurisdiction, we find it inapplicable here. The covenant implied by the trial court is not vague or impracticable. It merely requires the lessee to pay reasonable rent for the premises. Reasonable rent can be determined by applying such factors as we discuss later.

Lessee cites several other cases where courts have refused to imply a covenant. However, as the Kansas court noted in *Williams*, "[e]ach case appears to depend largely on its own facts." 424 P.2d at 550. Having read the cases cited, and a collection of similar cases, we have found nothing to sway our belief that the district court acted properly in implying a covenant to pay reasonable rent under these circumstances.

The trial court determined the damages in this case by finding the fair rental value of the property for the time the breach occurred, that is, from October 23, 1976, through December 16, 1978. Lessee contends that damages for the breach, if allowed, should have been based on a reasonable rate of return viewed from the parties' position at the time the lease was negotiated in 1961. More particularly, lessee argues that determining the rent according to the parties' positions when the lease was negotiated necessarily entails basing the rent on what would have been a reasonable rate of return at that time. We disagree.

By gearing the rental payments to the gross retail sales the parties evidenced an intent to make the rental commensurate with the economic value of the site for a business operation. It is commonly known that such percentage rental provisions are intended as a protection against the ravages of inflation where a long term lease is involved. The rental provisions agreed to by the parties in 1961 were not immutably fixed to conditions then existing. Rather, the rental provisions show the parties in 1961 contemplated changing conditions, and adopted a flexible arrangement that would enable both parties to ride with the rising economic current. Thus, it was appropriate for the trial court to determine a reasonable rental value by reference to conditions at the time of the breach.

In arriving at the fair rental value, the trial court considered several factors— the value of the property from the perspective of a hypothetical new lessee, the past rental history of the property, the circumstances of the parties in the leasing of the property, and a fair return on the lessors' investment in the property. The court received expert testimony on rental value, and testimony from the parties themselves, indicating a rental range of $2.00 to $6.00 per square foot of store space per year. The court found that "a reasonable rental of the property during the period of time from October 23, 1976, to December 17, 1978, was $4.00 per square foot per year." This figure was consistent with testimony concerning a reasonable rate of return on the lessors' investment, and with the developing pattern of rental payments under the existing lease. We conclude that there was substantial and competent, though conflicting, evidence to support the court's finding of a reasonable rental. It will not be disturbed on appeal. I.R.C.P. 52(a): *Cougar Bay Co., Inc. v. Bristol*, 100 Idaho 380, 597 P.2d 1070 (1979).

In summary, we have held that the trial court did not err in determining that the facts and circumstances gave rise to an implied covenant that the lessee would pay a reasonable and adequate rent to the lessors during the time lessee chose not to operate its supermarket on the premises. The trial court's finding that such reasonable rental was $4.00 per square foot per year will not be disturbed. We have also held that the trial court did not err in finding there was no implied covenant to continue operation of a supermarket upon the premises until the end of the lease.

The remaining issue, raised by the lessors, is whether the court erred in denying attorney fees requested in the amended complaint. There was no provision in the lease agreement for payment of such fees to the prevailing party.

The lessors urge an award under I.C. § 12–120(2) and § 12–121. We deem § 12–120(2) to be inapplicable on its face to a lease of real property. Under § 12–121, the court could, but was not obliged to, award attorney fees to the prevailing party. The limiting provisions of I.R.C.P. 54(e)(1) were not applicable to this case, since the suit was commenced prior to the effective date of Rule 54(e). However, as the rule had been adopted at the time he made his decision, the trial court was free to follow the principles of 54(e) and to deny such fees where he did not believe the case was defended frivolously, unreasonably or without foundation. We find no abuse of discretion; and the district court's order, fixing allowable costs and denying attorney fees, is hereby affirmed.

Under the principles of *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979) we decline to award attorney fees to respondent on this appeal. We do award costs to respondent.

WALTERS, C. J., and BURNETT, J., concur.