MILLIGAN v. HAGGERTY.

1. Mines and Minerals—Brick Clay—Construction of Lease.
   Under 15-year lease of land for purpose of digging and excavating for clay for manufacture of bricks and providing lessee was to pay 50 cents per thousand for all bricks manufactured therefrom, in which it was provided that lessee would commence digging on different parcels on certain dates and ''will dig said clay continuously from said dates until said clay is fully removed,'' parties intended lessee should excavate all clay suitable for making bricks from the premises within the 15-year period and lessee's failure so to do constituted a breach of the contract of lease (3 Comp. Laws 1929, § 13281).

2. Contracts—Construction.
   A contract should be construed with reference to all of its terms and so far as practicable or legally possible each term given effect, and if there is doubt as to the meaning, the conditions and circumstances surrounding the contracting parties and the subject matter with which they are dealing may be considered in arriving at a just construction.

3. Covenants—Form.
   No particular form of phraseology is essential to constitute a covenant.

4. Mines and Minerals—Brick Clay—Finding of Court.
   In action for damages for breach of contract of lease of land under which lessee was to excavate clay for manufacturing bricks, finding of trial court against defendants on defense that unexcavated clay was not suitable for making bricks held, sustained by evidence.

5. Same—Subsequent Market Conditions—Profit—Covenant to Excavate All Clay.
   Lessee under 15-year lease of land for purpose of excavating clay was not released from his covenant to excavate all clay on premises by fact that subsequent market conditions rendered it unprofitable to manufacture bricks from the clay on leased premises.

---

Interpretation of contracts, generally, see 1 Restatement, Contracts, § 226 et seq.

Unanticipated expense of performance does not discharge promisor, see 2 Restatement, Contracts, § 467.

6. SAME—BREACH OF COVENANT TO EXCAVATE ALL BRICK CLAY—
    MEASURE OF DAMAGES.

  The measure of damages for lessee's breach of covenant to ex-
  cavate all clay on leased premises suitable for making bricks
  within term of lease is the stipulated rate for the quantity
  which could have reasonably been excavated and used for mak-
  ing bricks, but was not, deducting its value unexcavated.

7. APPEAL AND ERROR—REMAND FOR DETERMINATION OF DAMAGES.

  Under record on appeal from judgment for defendant lessee in
  action for damages for alleged breach of covenant to excavate
  clay from leased premises, where it is determined that de-
  fendant was liable but there is testimony from which a con-
  troverted question arises as to the amount of damages, judg-
  ment is vacated and cause remanded with right to the trial
  court, upon application of either party, to take further testi-
  mony as to the amount of damages (Court Rule No. 72
  [1933]).

8. DAMAGES—BURDEN OF MINIMIZING.

  In action for damages for breach of contract of lease of land
  for excavating clay for making brick, the burden of producing
  testimony tending to minimize plaintiff's damages is on de-
  fendants.

  BUSHNELL, BOYLES, and WIEST, JJ., dissenting.

Appeal from Wayne; George (Fred W.), J. Sub-
mitted October 15, 1940. (Docket No. 78, Calendar
No. 41,251.) Decided January 6, 1941. Rehearing
denied April 11, 1941.

Action by Eloise F. Milligan against John S. Hag-
gerty, Haggerty Brick Company, a corporation, and
John S. Haggerty, doing business as Haggerty
Brick Company, for breach of leasehold contract.
Judgment for defendant. Plaintiff appeals. Re-
versed and remanded for determination of damages.

*Maxwell I. Silverstein,* for plaintiff.

*Cook, Smith, Jacobs & Beake,* for defendant.

North, J. Plaintiff brought this suit to recover damages for an alleged breach by defendants of a leasehold contract. On trial before the circuit judge without a jury, judgment was entered in favor of defendants, and this appeal followed.

Plaintiff is the sole heir at law of Alexander D. Fowler, deceased, and succeeded to his property rights. On the 16th day of October, 1922, Mr. Fowler entered into a lease with defendant John S. Haggerty, who, during a portion of the period involved in this suit, was doing business as the Haggerty Brick Company. For a number of years prior to the lease Mr. Haggerty had been engaged in manufacturing bricks. He owned and was operating upon land which practically surrounded the land covered by the lease, the purpose of which was to give Mr. Haggerty the right to excavate and use the clay on the Fowler property for making bricks. The Fowler land in Springwells township, Wayne county, consisted of two parcels, 10 acres being north of Michigan avenue and approximately 20 acres being just across and north of the Ford road. Primarily the term of the lease was for 15 years from and after its date; and the lease further provided:

"It is understood and agreed that the second party is to use said land for the purpose of digging and excavating for clay for the manufacture of bricks and the second party is hereby given that right without any additional cost than the rental herein provided.

"Second party agrees to pay as rental $.50 per thousand on all brick manufactured by him or his assigns from said clay, said rental to be payable on the tenth of each month for all brick manufactured in the preceding month.

"Second party agrees to render first party weekly statements of the brick so manufactured and at all reasonable times, the first party shall have the right

to make a reasonable investigation of the accounts of the second party so as to determine the amount of brick manufactured from the clay procured from said property.

"Second party further agrees that if the clay is all dug out of said property before the 15 years herein provided for, this lease shall be cancelled on the date that all the clay has been excavated.

"The rental herein fixed shall be in full for all rental or other charges for said property and for the clay so used.

"The second party hereby hires said premises for the term above mentioned and covenants and promises to pay to the first party, his representatives and assigns, the rent above described. And second party will commence digging said clay on the front 10 acres in the fall of 1922 and in the back 20 acres in the spring of 1923, and will dig said clay continuously from said dates until said clay is fully removed.

"First party covenants that said second party, on paying the aforesaid rental and performing the covenants aforesaid, shall and may peacefully and quietly have, hold and enjoy the said demised premises for the term aforesaid.

"The covenants, conditions and agreements made and entered into by the parties hereto are declared binding on their respective heirs, representatives and assigns."

Mr. Fowler died in March, 1923. The lessee continued to operate under and comply with the terms of the lease until September 9, 1929, at which time he ceased to excavate clay on plaintiff's land; and no more clay was removed by the lessee until August, 1936. Just prior to resumption of operations in August, 1936, it was orally agreed between Mr. Haggerty and a representative of plaintiff that the former should continue to take the clay from the

leased property but at the rate of 25 cents per thousand of bricks manufactured therefrom instead of 50 cents per thousand, as provided in the lease, and that otherwise the lease should continue in full force and effect. The suspension of operations by Mr. Haggerty during the period above indicated was caused by the then prevailing depression in consequence of which there was no market for bricks manufactured from this clay. After resumption of operations on the leased premises in August, 1936, payment for the clay removed was made to plaintiff at the reduced rate of 25 cents per thousand bricks manufactured. When the lease expired in the middle of October, 1937, Mr. Haggerty removed from the leased land all of his machinery and equipment used in manufacturing bricks. At that time there remained on the leased premises an unexcavated area of the clay which plaintiff asserts was 700 by 500 feet and 12 feet in depth, and sufficient for the manufacture of 86,016,000 bricks, according to plaintiff's contention. Defendants' testimony indicates the amount of unexcavated clay is much less.

The theory of plaintiff's case is that under the terms of the lease the lessee obligated himself to excavate continuously and use in manufacturing bricks within the 15-year leasehold period all of the clay on the leased property, and to pay the lessor 50 cents per thousand on all bricks manufactured therefrom. This suit is for the recovery of damages alleged to have resulted to plaintiff in consequence of defendants' failure to excavate and utilize all the clay on the leasehold premises in the manner stipulated in the lease.

Defendants' brief states their contention as follows:

'"Counsel for defendants maintain, on the other hand, that the dominating intent of Alexander D. Fowler and which dictated the inclusion of the vari-

ous provisions of the lease which are in question, was to insure himself against his property being tied up and stagnated for 15 years while Mr. Haggerty excavated the clay deposit on his own lands, which surrounded the Fowler property; that there is no express covenant to manufacture continuously and no logical or reasonable basis for interpreting the lease as containing any such express covenant; that Mr. Haggerty fully and completely complied with all of the terms and provisions of the lease and that, consequently, there was no breach.

"Secondly, assuming merely for the purpose of argument that there was a breach of the lease by reason of failure on the part of Mr. Haggerty to dig continuously, no recovery can be had by the plaintiff in this case predicated on her theory, as expressed in her pleadings and brief, for the reason that *there is no express covenant to manufacture bricks and none can be implied.*"

The trial judge in arriving at his decision in favor of defendants held in accordance with their contention as outlined in the last preceding paragraph. In part his opinion reads:

"It is necessary, in the opinion of the court, to find an imposing obligation on the defendant, under the terms of the lease, whereby the defendant was required to manufacture brick from the excavated clay until the clay on the premises was completely exhausted. Of course, there is an obligation on the defendant to dig the clay, *but there is no provision in the lease which creates an express covenant or obligation on his part to manufacture such brick.* Such covenants cannot arise by implication."

Under the record we think the conclusion reached by the circuit judge in the particular just above noted cannot be sustained. Careful examination of this record satisfies us that when the parties en-

tered into the lease they intended that the lessee should excavate all the clay suitable for making bricks from the leased premises within the leasehold period of 15 years; that the consideration which the lessee agreed to pay for the right so to excavate and remove all of this clay was 50 cents per thousand of bricks manufactured therefrom. While there may be some uncertainty as to what meaning should be given under the circumstances to the provision that the lessee "will dig said clay *continuously*," we are of the opinion that plaintiff's right to recover does not necessitate recourse to this particular provision. Wholly apart from it, the leasehold contract by express terms obligated the lessee to remove *all of the clay* from the leasehold premises within 15 years and to pay the lessor therefor in the manner above noted. From the standpoint of the lessor, clearly it was important that the provision of the lease as to removing all of the clay should be fulfilled. It is not to be presumed that the lessor, for less than the full amount of the consideration named in the lease, would have entered into a contract whereby the lessee might excavate only a part of the clay on the premises and thereby leave it in a condition where its normal value would be impaired. So to construe the contract in the instant case would minimize the consideration moving to the lessor by several thousand dollars, and there seems to be no room for argument but that the lessee's failure to excavate within the 15-year period "all the clay" constituted a breach of his contract.

We think the circuit judge placed an unduly restricted meaning upon this contract when he concluded: "there is no provision in the lease which creates an express covenant or obligation on his [lessee's] part to manufacture such brick." A con-

tract should be construed with reference to all of its terms. *Brittson* v. *Smith,* 165 Mich. 222; *Caledonia Coal Co.* v. *Consolidated Coal Co.,* 181 Mich. 431. So far as practicable or legally possible, in construing a contract each and all of its provisions should be given effect; and if there is doubt as to the meaning, the conditions and circumstances surrounding the contracting parties and the subject matter with which they are dealing may be considered in arriving at a just construction. *Smith* v. *Durkee,* 166 Mich. 484. No particular form of phraseology is essential to constitute a covenant. *Vincent* v. *Crane,* 134 Mich. 700. Considering this lease under the rules above stated, it must be held that there was no thought on the part of either the lessor or the lessee that the clay would be removed by the latter except for the purpose of using it to manufacture bricks. Hence the only fair construction of which this lease is susceptible is that within the term of 15 years the lessee was obligated to remove *all the clay* suitable for manufacturing bricks and to use it for that purpose; and in consideration of his having the right so to do the lessee obligated himself to pay the lessor 50 cents per thousand of the bricks to be manufactured. We quote again from the lease:

"It is understood and agreed that the second party is to use said land for the purpose of digging and excavating for clay for the manufacture of bricks.

"Second party agrees to pay as rental $.50 per thousand on all brick manufactured by him or his assigns from said clay.

"The second party hereby hires said premises for the term above mentioned and covenants and promises to pay * * * the rent above described.

"And second party [lessee] * * * will dig said clay continuously from said dates until said clay is *fully removed.*"

We are mindful of the statutory provision that no covenant shall be implied in any conveyance of real estate, except oil and gas leases (3 Comp. Laws 1929, § 13281 [Stat. Ann. § 26.524]); but we are convinced that a fair construction of the lease in suit discloses an express obligation or covenant on the part of the lessee to excavate within 15 years and to manufacture into bricks all of the clay on the leased premises suitable for that purpose.

*Gates* v. *Kenney,* 223 Mich. 187, arose out of a farm lease which provided that as rent the lessee should pay the lessor "one-third of all crops raised *and sold* off said farm." In defense of a suit for rent the lessee contended that he had the right to determine how much of the crops should be sold, and so to limit the amount of rental. The Court's holding, from which we quote, may well be applied to the instant case. "To literally construe the language used as defendant asks us to do is so at variance with a clear intent of the parties as gathered from the context of the instrument, from the subject matter of the contract, from the surrounding circumstances, that we do not hesitate to reject such construction." See, also, *Coulter* v. *Norton,* 100 Mich. 389 (43 Am. St. Rep. 458).

The foregoing consideration necessitates the conclusion that the trial judge erred in holding defendants were not obligated to manufacture bricks from the clay on the leasehold premises, and that therefore plaintiff could not recover.

As to the further defense that the unexcavated clay was not suitable for making bricks, the circuit judge found against defendants; and under the record we find no justification for disturbing this

determination. Nor is there merit to defendants' claim that the lessee was released from performing his contract by reason of the fact that under subsequent market conditions it became unprofitable for him to manufacture bricks from the clay on the leased premises. "That the mining of coal under the lease had become unprofitable, and therefore that the lessee was excused from any further obligation under the lease, is not a tenable position." *Williams Pocahontas Coal Co.* v. *Berwind Land Co.* (C. C. A.), 76 Fed. (2d) 319, 323, certiorari denied, 296 U. S. 610 (56 Sup. Ct. 128, 80 L. Ed. 432). See, also, *Chase* v. *Clinton County,* 241 Mich. 478.

While it did not enter materially into the final decision of the circuit judge, he included in his opinion a statement of the rule as to the measure of damages in event substantial damages were to be awarded to plaintiff. In this particular he quoted the following:

"The measure of damage for breach of an implied covenant to mine all the coal that may be reasonably mined is the stipulated rate for the quantity which could have reasonably been mined, but was not, deducting its value unmined." Note, 60 A. L. R. 935, citing *Lyon* v. *Miller,* 24 Pa. 392 (10 Mor. Min. Rep. 85).

The circuit judge added: "The reason why this rule is fair and equitable is that if the court should award to plaintiff the value of the brick per thousand which could be manufactured from the remaining portion of the area, then not only would plaintiff have a judgment for the full amount, but during a normal period he would also be able to realize on resale practically the same amount, and therefore the harvest would be double, which, in the opinion of the court, would work an injustice

on the defendant." We think the stated rule is correct.

While in plaintiff's cross-examination the following appears: "*Q.* That clay, witness, is useful only to a * * * manufacturing plant that is adjacent to the land. Is that correct? *A.* Yes, that is correct to this extent unless they want to draw it away and use it for pottery;" still we think the record contains other testimony and discloses other circumstances from which a controverted question arises as to the amount of damages, and that in the instant case the pertinent testimony should be passed upon and the amount of damages determined by the trial court, rather than upon this appeal. Further, in order that a just determination may be reached, our remand is with right to the trial court, upon application of either party, to take further testimony as to the amount of damages. Court Rule No. 72 (1933). As the record now stands, there is no testimony as to whether plaintiff's land is worth more, and if so how much more, without the clay having been excavated than it would have been if it had been excavated 12 to 15 feet below the natural level of the land. In this connection it may be noted that the burden of producing testimony tending to minimize plaintiff's damages is on defendants. *Tradesman Co.* v. *Superior Manfg. Co.,* 147 Mich. 702; *Flickema* v. *Henry Kraker Co.,* 252 Mich. 406 (72 A. L. R. 1046).

The judgment entered in the circuit court is vacated and the case remanded for further consideration and determination of the amount of damages, with right given to the circuit judge to take additional testimony relative thereto. Costs of this appeal to appellant.

SHARPE, C. J., and CHANDLER, MCALLISTER, and BUTZEL, JJ., concurred with NORTH, J.

Boyles, J. (*dissenting*).   The contract does not by express terms or necessary implication require the defendants to remove all the clay within 15 years. It is merely a lease whereby plaintiff leases certain property to defendants for a term of 15 years. It is agreed that defendants may use the property for digging and removing clay for the manufacture of bricks.   Defendants agreed to commence digging clay at certain times (in 1922 and 1923).   The controversy arises over a provision that defendants "will dig said clay continuously from said dates until said clay is fully removed."   Nothing is said as to how much clay must be removed in any month or any year.   The lease merely provides that "if" the clay is all dug during the 15 years, the lease shall be cancelled on the date that all clay has been excavated.   Obviously, the term ended at the expiration of 15 years.   Whatever clay remained continued to be the property of plaintiff. The defendants stopped digging the clay in 1929 and did not resume until August, 1936.   The parties themselves have placed their own construction on the meaning of "continuously."   No objection was voiced to the discontinuance, and, by agreement, in 1936 digging was resumed at a different rate of compensation.   If defendants breached a covenant in 1929 to dig "continuously," it is now too late for plaintiff to maintain suit for damages on that account.

We should not attempt to read into the contract a covenant which is not there.   Judgment for defendants should be affirmed, with costs.

Bushnell and Wiest, JJ., concurred with Boyles, J.