## CARL A SCHUBERG, INC v THE KROGER CO

Docket No. 53420. Submitted December 9, 1981, at Grand Rapids.—
Decided February 17, 1982.

In 1957, Carl A. Schuberg, Inc., built for and leased to the Kroger
Company a grocery store in a shopping center being developed
by Schuberg. The ten-year lease provided that Schuberg would
not sell or lease any property owned by Schuberg within one
mile of the shopping center for the purpose of conducting a
grocery store. The lease provided that Kroger would pay $980
per month plus 1% of all yearly sales in excess of $1,080,000
and less than $1,272,000. The override payment never occurred
during the initial lease, and, in 1964, the lease was renegoti-
ated so that Kroger could expand. The new lease increased the
rent to $1,476.56 per month with the new override provision
being 1% of sales in excess of $1,771,875. The renegotiated
lease was for a 12-year period, with renewals for successive 5-
year periods at Kroger's option, the first such option having
been exercised by Kroger in 1976. The override provision was
triggered in 1975, 1976 and 1977. In June, 1978, Kroger va-
cated the store but continued to pay the fixed monthly rent on
the premises. Despite Kroger's attempts to sublet the store, the
store has remained unoccupied. Schuberg brought an action in
Mecosta Circuit Court claiming that Kroger had broken the
lease by failing to occupy the grocery store continuously. Law-
rence C. Root, J., held for plaintiff, with damages for the breach
of the lease through the end of its term in 1981 being the fixed
rental amount plus an override payment based upon the esti-
mated gross sales as computed using the United States Depart-
ment of Labor's All Urban Consumers Food-at-Home Index.

REFERENCES FOR POINTS IN HEADNOTES

[1] 49 Am Jur 2d, Landlord and Tenant § 143.
[2] 20 Am Jur 2d, Covenants, Conditions, and Restrictions § 187.
49 Am Jur 2d, Landlord and Tenant § 165.
[3] 49 Am Jur 2d, Landlord and Tenant § 398.
[4] 49 Am Jur 2d, Landlord and Tenant §§ 238, 244.
[5, 6] 49 Am Jur 2d, Landlord and Tenant §§ 231, 519, 1147.
[7] 54 Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade
Practices §§ 517, 574.

Defendant appealed. Plaintiff cross-appealed. The cross-appeal was dismissed with prejudice by stipulation of the parties. *Held:*

1. Courts favor the free alienability of land; accordingly courts construe express restrictive covenants strictly against the party seeking the enforcement of the covenant. With respect to leases involving the operation of a store, courts are reluctant to impose an obligation on the lessee to actively operate the store in the absence of an express provision in the lease requiring active operation.

2. Judicial reluctance to infer an intent of continual occupancy of property under a lease may be overcome where the lease contains a percentage override clause and the fixed minimum rent is unsubstantial. In the present case, in view of the fact that the override clause was not triggered for 17 years under the original and renegotiated leases, the minimum fixed rent cannot be said to have been unsubstantial.

3. The existence of the noncompetition clause in the lease does not create an inference that Kroger was obligated to continuously operate a grocery store on the leased property.

Reversed.

1. LANDLORD AND TENANT — LEASES — JUDICIAL CONSTRUCTION.
   Unclear portions of a lease for real property are construed against the lessor unless the lessee drafted the lease.

2. COVENANTS — RESTRICTIVE COVENANTS — LEASES — ALIENABILITY OF LAND — JUDICIAL CONSTRUCTION.
   Courts favor the free alienability of land; accordingly, courts construe express restrictive covenants strictly against the party seeking the enforcement of such covenants.

3. LANDLORD AND TENANT — LEASES — ASSIGNMENT OF LEASES.
   Tenants holding lands under a lease generally are entitled to assign the lease, absent restrictive provisions in the lease.

4. LANDLORD AND TENANT — LEASES — OPERATION OF BUSINESS — JUDICIAL CONSTRUCTION.
   Courts are generally reluctant to impose upon the lessee of property being used as a store any obligation to actively operate a store on such property in the absence of an express provision in the lease requiring active operation.

5. LANDLORD AND TENANT — LEASES — CONTINUAL OPERATION — JUDICIAL CONSTRUCTION.
   Judicial reluctance to infer an intent of continual occupancy of property under a lease may be overcome where the lease

contains a percentage override clause and the minimum rent set in the lease is unsubstantial.

6. LANDLORD AND TENANT — LEASES — PERCENTAGE OVERRIDE PROVISIONS.

The minimum rent fixed in a lease of property containing a percentage override clause will not be deemed to be unsubstantial where the percentage override clause had not been triggered for a number of years and, at the time of the execution of the lease, the parties to the lease did not anticipate the rate of inflation which has existed in recent years.

7. LANDLORD AND TENANT — LEASES — NONCOMPETITION PROVISIONS.

The existence of a noncompetition clause in a lease of property does not give rise to an inference that the lessee must operate the business located on the leased property continuously.

*Walz, Fershee, Jordan & Stanton, P. C.* (by *John A. Braden*), for plaintiff.

*Fraser, Trebilcock, Davis & Foster, P. C.* (by *David E. S. Marvin*), for defendant.

Before: T. M. BURNS, P.J., and R. B. BURNS and M. J. KELLY, JJ.

R. B. BURNS, J. Plaintiff is the owner of premises leased by defendant, Kroger Company. In the 1950's plaintiff planned to develop a shopping center on its property. It specifically sought a grocery store as a nucleus for the center. After extensive negotiations, in 1957, Kroger Company and plaintiff entered into an agreement whereby plaintiff was to build a grocery store on the land, which defendant would occupy.

Defendant was to pay plaintiff $980 per month for 10 years. The additional terms of the lease prohibited plaintiff from selling or leasing any property it owned, within a mile of the shopping center, for purposes of conducting a grocery store. The defendant was granted an option to renew the

lease eight successive times, the first three renewals being for five-year periods, the last five for one-year terms at a $900 monthly rate. The lease further provided that defendant agreed to pay during the successive renewals additional rent of 1% of all sales in excess of $1,080,000 and less than $1,272,000.

The override payment never occurred, and in 1964 the parties renegotiated the lease in order for Kroger to expand. The new lease increased the rent to $1,476.56 per month. It covered a 12-year period, and offered 3 successive 5-year renewals at defendant's option. This time the trigger for the 1% of sales payment was increased to $1,771,875. The first override payments were made in 1975, 1976, and 1977, to wit: $17,826.36; $23,115.40; and $25,683.62. Then, June 25, 1978, defendant vacated the store but continued to pay the flat monthly rental base for the premises.

Although defendant tried to sublet the store, it remained vacant. Defendant continues to pay the base rent. Plaintiff brought suit, charging that defendant had broken its lease by failing to continuously occupy the grocery store. The trial judge held for plaintiff. Defendant appeals.

The only issue on appeal is whether the lease, when construed as a whole, gives rise to an implied covenant that Kroger was obligated to continuously operate a grocery store for the duration of the lease.

There are several basic rules of construction which must be adhered to in interpreting the lease. Unclear portions of a lease are construed against lessors, unless the lessee drafted it. *Cinderella Theatre Co, Inc v United Detroit Theatres Corp,* 367 Mich 424; 116 NW2d 825 (1962). Here, apparently, the lessee Kroger did draft the lease.

So, this presumption would seem to work against Kroger. However, courts favor the free alienability of land. Even when express restrictive covenants exist, courts construe such provisions strictly against parties seeking their enforcement. *Colony Park Ass'n v Dugas,* 44 Mich App 467; 205 NW2d 234 (1973).

Generally, absent restrictive provisions, tenants are entitled to assign a lease. If the tenant happens to operate a store, the majority rule, as stated in Anno: *Lease of Store as Requiring Active Operation of Store,* 40 ALR3d 971, 974-975 is:

"Courts, however, are reluctant to impose any obligation on the lessee of a store to actively operate it, at least in the absence of some express provision in the lease requiring him to do so. * * *

\* \* \*

"Generally * * * the lessee is under no obligation, in the absence of a specific provision therefor, to occupy or use, or continue to use, the leased premises, even though one of the parties, or both, expected and intended that they would be used for the particular purpose to which they seemed to be adapted or which they seemed to be constructed."

See, also, *Stevens v Mobil Oil Corp,* 412 F Supp 809, 815 (ED Mich, 1976). Judicial reluctance to imply a continuous occupancy lease may be overcome when the lease contains a percentage override clause. *Bobenal Investment, Inc v Giant Super Markets, Inc,* 79 Mich App 31; 260 NW2d 915 (1977). The basic inquiry becomes whether or not the minimum rent set is substantial.

The trial judge adopted the various presumptions and determined that:

"The original lease does not contain any specific express clause stating the purpose for which Kroger

was leasing the building, either permissive or restrictive. There is no specific express clause to the effect that Kroger must occupy the building and use it as a retail grocery operation. * * * The only clearly express restriction Kroger agreed to in the lease is that found in ¶ 1: to lawfully use the premises."

The trial judge further opined:

"There are no clearly expressed restrictions against assignment in the 1957 lease, but rather the lease says that the premises are leased to Kroger, 'its successors and assigns' and that the lease shall 'bind and run to the benefit of the parties hereto, their * * * assigns.'"

We agree with the trial judge that, if Kroger is bound by the lease to continuously use the premises as a grocery store, such an intent must be found from a less clearly stated restriction in the contract.

Our review must start with an inquiry into MCL 565.5; MSA 26.524, which provides:

"No covenant shall be implied in any conveyance of real estate, except oil and gas leases, whether such conveyance contains special covenants or not."

MCL 565.35; MSA 26.552 specifies that a lease is a conveyance of real estate as the term is used in MCL 565.5; MSA 26.524.

The statute would seem to preclude ever finding an implied covenant in a lease. However, plaintiff argues that the law, as it has evolved, reveals that the statute is not to be narrowly construed. The trial court agreed that MCL 565.5 presented no obstacle to finding an implied covenant that Kroger would continuously occupy the leased premises.

Admittedly, the Michigan courts have looked to

the wording in contracts and, despite the absence of express provisions, found unspoken obligations encompassed in agreements. Nonetheless, when these courts have found an obligation to exist, the obligations were logically and unavoidably ascertained from the express provisions of the parties' agreement.

The trial judge relied on *Milligan v Haggerty*, 296 Mich 62; 295 NW 560 (1941), to dismiss Kroger's contention that MCL 565.5; MSA 26.524, controlled this case. We find the reliance misplaced. *Milligan* involved a 15-year lease to dig and excavate clay for bricks. The rent was based on the number of bricks produced. The defendant stopped excavating and producing bricks. The plaintiff argued there was an implied covenant that defendant continuously produce bricks. The defendant attacked the plaintiff's argument based on the "no implied covenants" statute. The Court referred to the terms of the contract and concluded that defendant had to operate his business continuously. However, the Court did not reach its decision based on the "no implied covenants" statute. Rather, it determined that the lease expressly bound the defendant to remove the clay.

Likewise, in *Real Estate Stores, Inc v Harris*, 321 Mich 623; 33 NW2d 97 (1948), cited by the court below, the tenants expressly were given the right to demolish the building leased and construct another one. Based on this provision the Court held there was an implied covenant that the tenants could repair the building. The Court adopted the following language from *Milligan v Haggerty, supra,* 69:

" '[I]n construing a contract each and all of its provisions should be given effect; and if there is doubt as to the meaning, the conditions and circumstances sur-

rounding the contracting parties and the subject matter with which they are dealing may be considered in arriving at a just consideration.' " *Id.,* 627.

The above passage reveals that the holding in *Real Estate Stores, Inc* was not reached in circumvention of MCL 526.5; MSA 26.524.

We find that the statute was properly interpreted in *De Grasse v Verona Mining Co,* 185 Mich 514; 152 NW 242 (1915). There, the defendant, who leased mining rights, agreed to pay either a flat rental base or a set sum per ton of iron ore mined. The defendant stopped mining. The plaintiff claimed that the lease had been forfeited since the lease implied a covenant to explore and mine. *De Grasse, supra,* stated:

" 'The grant of the right to mine and the omission of words requiring operation does not indicate the inclusion of a covenant to, or a condition requiring operation, but the opposite.' " *Id.,* 531.

In essence, the Court found that the statute preempted the implication of a covenant to mine the property, in the absence of a provision in the contract.

Although the statute, as it has been interpreted, lends support to Kroger's position, it does not summarily dispose of the issue. Michigan courts routinely have delved behind the language of a contract when confronted with an "implied covenant" argument. Therefore, we cannot interpret the statute as creating a per se rule.

In order to determine if the intent of the parties was to bind Kroger to continuously operate a grocery store on the premises, the trial court considered whether the base rent provided a substantial return on the plaintiff's investment. This

test has been adopted by several courts. *Bobenal Investment v Giant Super Markets, supra, Crestwood Plaza, Inc v Kroger Co,* 520 SW2d 93 (Mo App, 1974). Although we find the test was the proper one to determine the intent of the parties at the time the lease was entered into, we disagree with the trial judge's conclusion as applied to the particular situation before us.

In the absence of evidence that the minimum rent is unsubstantial, courts generally do not infer a covenant to continue operations. *Bobenal Investment v Giant Super Markets, supra.* In *Bobenal Investment* a grocery store opened up another operation in a second shopping center and moved out of the first premises. The plaintiffs argued that an implied covenant to continue to do business in the leased space existed. This Court rejected plaintiffs' argument, stating:

"In the case before us, there is nothing in the record to indicate that $21,000 a year minimum rental was unsubstantial. Only in the last two years of defendant's 10-year occupancy were sales sufficient to invoke the percentage rate. To us, this suggests that the basic rent was not unsubstantial. Accordingly, we find no error on this issue." *Id.,* 40-41.

Here, the monthly rent initially was set at $980. Later when the parties renegotiated the lease, the rent was increased. We do not find this monthly rent figure to constitute an unsubstantial amount of rent. When the parties renegotiated the contract, the rate of inflation had only climbed slightly since the inception of the lease. The percentage clause had never been triggered. As a matter of fact, for the first 17 years of the lease, no money ever was realized pursuant to the override clause.

The trial judge stressed the fact that inflation was foreseeable when the parties renewed the lease agreement and that plaintiff inserted the percentage clause for an edge against inflation. Although we agree that the clause offered protection against inflation, we feel the trial judge's opinion was based on hindsight. When the parties entered into the contract, it is doubtful that plaintiff had the clairvoyance to anticipate runaway inflation at a yearly rate of 12-13% when, at the point in time that the contract was negotiated, inflation was creeping slowly at 1% a year.

In *Stop & Shop, Inc v Ganem,* 347 Mass 697; 200 NE2d 248 (1964), a lease containing an override clause was found not to contain an implied covenant that the store continuously operate. The Court stated:

> "An apparently substantial minimum rent in an apparently complete written lease, in the absence of a showing of disparity between the fixed rent and the fair rental value, gives ground for an inference that fixed rent and the lessee's self-interest in producing sales were the only assurance of rent that the lessor required. *Id.,* 251.

From the perspective of the time at which the lease was negotiated, a glaring gap between the fixed rent and the fair rental value is not disclosed. The parties extensively bargained for the contract. There is no indication that the override clause served as a device to bring the rent up to the fair rental value, especially where by 1964, when the parties renegotiated the lease, the override clause had not been activated.

In the past, courts have been reluctant to transform percentage override clauses into the equivalent of a fixed rental basis. *Williams v Safeway*

*Stores, Inc,* 198 Kan 331; 424 P2d 541 (1967), stated:

"[T]he design of such a provision is to permit percentage rentals to fluctuate both up and down or to be discontinued when the gross sales from the premises are less than the stated sum. If this court determines an implied covenant in the lease existed which required payment of comparable rentals we say, in effect, it was intended as a fixed rental requiring comparable sales. The effect would be to change the percentage of income rental into a fixed rental based upon past sales experience."

We also are reluctant to find that the percentage rentals were intended as a form of fixed rent, absent an express agreement to the contrary.

The plaintiff argues that reading the lease as a whole directs a conclusion that Kroger must continuously operate a grocery store on the premises. However, the record reveals that Kroger, during the time that negotiations occurred, had a specific policy of not binding itself to continuous occupancy clauses. See *Kroger Co v Chemical Securities Co,* 526 SW2d 468 (Tenn, 1975). Also, where parties have deliberately and extensively negotiated a contract, as a court we should decline to rewrite an agreement to include a continuous occupancy clause. *Crestwood Plaza v Kroger Co, supra.*

Plaintiff argues that, since a noncompetition clause was included in the contract to benefit Kroger, Kroger in return impliedly agreed to continuously occupy the premises. However, courts consistently have refused to find that noncompetition clauses imply that a defendant is bound to continuously operate a business. *Kroger Co v Chemical Securities Co, supra, Williams v Safeway Stores, Inc, supra.*

Plaintiff negotiated several contracts during that period with other tenants in the shopping center. Some of those contracts specifically included continuous occupancy clauses. Under these circumstances, we find the parties' intent did not encompass Kroger's being bound by a continuous occupancy clause. Accord, *Kroger Co v Bonny Corp,* 134 Ga App 834; 216 SE2d 341 (1975). Plaintiff's argument, namely, that the continuous occupancy clauses were included in other contracts to honor the noncompetition clause with Kroger, is unpersuasive.

There is a body of case law in which implied covenants to continuously operate stores have been discerned from written agreements. However, the trial judge's reliance on that authority was misplaced. Those cases are readily distinguishable because, unlike the situation here, the contracts contained specific use provisions. See *Ayres Jewelry Co v O & S Building,* 419 P2d 628 (Wy, 1966), *Ingannamorte v Kings Super Markets, Inc,* 55 NJ 223; 260 A2d 841 (1970).

We find no basis for the conclusion that the base rent was unsubstantial.

Reversed.