908 F.2d 973
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SAMIR-MARY, INC., Plaintiff-Appellant,
v.
EFRON-INVESTORS-II, Defendant-Appellee.
 No. 89-1971.
 United States Court of Appeals, Sixth Circuit.
 July 25, 1990.
 
 Before MILBURN and DAVID A. NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a diversity case arising under Michigan law. It involves a commercial lease agreement between Samir-Mary, Inc., the tenant, and Efron Investors II, the landlord. Samir-Mary notified Efron that it intended to assign the leasehold to a third party, and Efron refused to approve the proposed assignee. The district court held that Efron was within its rights in withholding approval. We agree, and we shall affirm the district court's judgment in favor of Efron.
 
 
 2
 * The leased property, which is located in a shopping center in Ypsilanti, Michigan, is used as a supermarket. The lease was originally granted by Efron's predecessor in interest, the developer of the shopping center, to the Great Atlantic & Pacific Tea Co. A & P, which prepared the lease, subsequently assigned its interest to Samir-Mary.
 
 
 3
 In March of 1988 Samir-Mary accepted an offer from Food Basket Supermarkets, Inc., for the purchase of Samir-Mary's supermarket operation. The offer was contingent upon Food Basket receiving an assignment of the lease. The lease still had six years to run, not counting renewal options.
 
 
 4
 Paragraph 28 of the lease agreement provides as follows:
 
 
 5
 "LESSEE may assign this lease and may license and/or sublet all or any parts of the demised premises, but neither such assignment, licensing, nor subletting shall release or relieve LESSEE from liability or obligation hereunder to LESSOR. The use of the demised premises or any part thereof by subtenant or assignee shall not be in violation of restrictive covenants granted by LESSOR in favor of other tenants operating in the Center of which the demised premises forms a part. If at any time LESSEE shall desire to sublet or assign the demised premises, it shall notify LESSOR of the name of the proposed subtenant or assignee and of the general nature of the business which such subtenant or assignee proposes to conduct. If the business which such subtenant or assignee proposes to conduct would conflict with exclusive rights granted in leases to other tenants, LESSOR may, within ten (10) days of receipt of such notice, refuse to approve such sublease or assignment. If LESSOR fails to approve such subtenant or assignee within ten (10) days after receipt of such notice, or if LESSOR refuses to approve such subtenant or assignee for any other reason than that permitted above, LESSEE may terminate the lease. LESSOR shall, at any time LESSEE may request, supply to LESSEE copies from leases to other tenants of all clauses granting exclusive rights to conduct various businesses in the Shopping Center." (Emphasis supplied.)
 
 
 6
 By letter dated August 5, 1988, Samir-Mary notified Efron that it intended to assign its lease to Food Basket. Ten days after receipt of the letter, Efron gave notice that it refused to approve Food Basket as assignee. Efron did not claim that Food Basket's proposed business would conflict with exclusive rights granted other tenants in the shopping center. Because it was exercising its right to refuse approval for "any other reason," Efron acknowledged that Samir-Mary had the right to terminate the lease.
 
 
 7
 Samir-Mary argues on appeal that Efron acted unreasonably and in bad faith. It contends that Efron withheld approval only because it wished to enter into a direct lease with Food Basket at a higher rental, and that Efron was thus objecting not to the assignee but to the assignment. Such an objection, Samir-Mary contends, is not authorized by the lease, is unreasonable, and conflicts with a growing body of caselaw from other jurisdictions holding that lessors must act in good faith when refusing to permit assignment of leases.
 
 II
 
 8
 Normally, under Michigan law, ambiguities in a lease must be strictly construed against the landlord. See Muskegon v. Lipman Investment Corp., 66 Mich.App. 378, 239 N.W.2d 375 (1976). Because the lease in this case was prepared by Samir-Mary's predecessor in interest, however, and not by the landlord or its predecessor, any ambiguity in the lease should be construed most strictly against the tenant. See Carl A. Schuberg, Inc. v. Kroger Co., 113 Mich.App. 310, 317 N.W.2d 606 (1982).
 
 
 9
 A lease with no restrictions against assignment may be freely assigned without the landlord's consent. See Carl A. Schuberg v. Kroger, supra. Where consent is required, however, Michigan law has traditionally allowed consent to be withheld for any reason. The consent requirement has been held to be a fair and reasonable covenant designed to preserve a landlord's right to determine who shall occupy his premises. White v. Huber Drug Co., 190 Mich.App. 212, 157 N.W. 60 (1916), see also, 21 A.L.R. 4th, 188, 192-96 (Michigan one of 18 jurisdictions that allow landlord arbitrarily to refuse assignment or sublease).
 
 
 10
 The lease that is before us in this case expressly allows the tenant to assign the lease or sublet the premises. The right is not unqualified; the lease gives the landlord the right to reject potential subtenants or assignees because of a conflict with rights of other tenants (in which case the lessee can do nothing), or "for any other reason" (in which case the lessee may terminate the lease.)
 
 
 11
 We perceive no ambiguity in this qualification. If there were an ambiguity, however, as noted above, it would have to be resolved against Samir-Mary as the assignee of the party that drafted the lease.
 
 
 12
 If, as Samir-Mary contends, Efron refused approval because it hoped thereby to get a higher rental, that would seem to come under the heading of "any other reason." There is nothing unlawful about such a reason; Efron cannot raise the rent unilaterally, whether or not the property would command a higher rental under current market conditions, but Efron clearly has the right to refuse approval of any assignee who will not agree to pay the rent Efron wants. Efron has such a right because the lease says it does--and under Michigan law, the lease will be applied as written. If Efron is wrong in its assessment of the rental market, of course, it runs the risk that when the proposed assignee is rejected, the current tenant will exercise its right to walk away from the lease and leave Efron worse off than it would have been otherwise.
 
 
 13
 The contention that Efron disapproved the assignment as such, rather than disapproving the assignee, is not persuasive. The letter of disapproval explicitly says that "the Lessor has refused and does hereby again refuse, to approve your indicated sub-tenant or assignee...." That Efron might have been willing to enter into a new lease with Food Basket at a higher rental in no way suggests that Efron has not refused to approve Food Basket as an assignee of the existing lease.
 
 
 14
 The judgment of the district court is AFFIRMED.