**PLAZA FORTY–EIGHT, INC., Plaintiff,**

**v.**

**The GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., Defendant.**

Civ. A. No. 91–C–601.

United States District Court, E.D. Wisconsin.

April 5, 1993.

Craig A. Caliendo, Hiller & Frank, Milwaukee, WI, for plaintiff.

William H. Harbeck, Quarles & Brady, Milwaukee, WI, for defendant.

## ORDER

REYNOLDS, Senior District Judge.

On May 8, 1991, plaintiff Plaza Forty–Eight, Inc. ("Plaza") commenced this action in the Circuit Court for the County of Milwaukee, Wisconsin alleging defendant The Great Atlantic & Pacific Tea Company, Inc. ("A & P") breached an implied covenant contained in a commercial lease. On June 10, 1991, this action was removed to this court. Presently before the court are the parties' cross-motions for summary judgment.

This court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and (c)(1) because this action is between citizens of different states and the amount in controversy exceeds $50,000. Venue is proper in this court pursuant to 28 U.S.C. § 1391(a) and (c) because A & P "resides" in this district.

## FACTS

On January 17, 1975, A & P entered a twenty-year commercial lease with Jerome Schostak, d/b/a Midland Venture, for premises in Midland, Michigan ("the Lease").[1] The initial term commenced September 30, 1976 and expires September 30, 1996. (May 8, 1991 Compl. ¶ 7.) On October 30, 1989, Plaza succeeded to the lessor's interest in the lease.[2] The Lease provided for a fixed rent of $8,630.00 per month. (Lease at 4.) In addition, the Lease provided for percentage rent under certain circumstances:

Commencing with the first year of the term of the lease, in addition to the rental hereinabove provided, LESSEE shall pay annually as additional rent percentage rental, in an amount equal to one (1%) per cent of all sales [defined as gross receipts with certain exceptions] in excess of Ten Million Three Hundred Fifty Six Thousand and 00/100 Dollars ($10,356,000.00) Dollars made by LESSEE in and from the demised premises per lease year.

(Lease, Rider No. 3.)

A & P did not have sufficient sales to owe the percentage rent until 1979.[3] On July 14, 1990, A & P ceased operation of its business on the leased premises. A & P paid Plaza $12,561.00 for percentage rent from October 1, 1989 to July 14, 1990. (Percentage Rent Report, attached to the March 11, 1992 Juni Aff. as Ex. 1; Caliendo Aff. ¶ 14.) Since ceasing operation, A & P has only paid the fixed rent. (Caliendo Aff. ¶ 14.)

On November 13, 1990, A & P entered into a sublease, pursuant to ¶ 41 of the Lease,[4] with Dunham's Athleisure Corporation.[5] The sublease provides for a fixed rent of $9,000.00 per month. In addition, the sublease provides that Dunham's will pay percentage rent in the amount of two percent of its gross receipts in excess of $3,000,000.00. As of March 1992, Dunham's had not made sufficient sales to invoke the sublease's percentage rent provision.

## ANALYSIS

*Summary Judgment Standard*

■ This court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions,

---

1. A copy of the lease is attached to the March 13, 1992 Caliendo Aff. as Ex. A.

2. A copy of the assignment is attached to the Caliendo Aff. as Ex. B.

3. *See* Percentage Rental Report, dated October 5, 1978 (covering the period of October 1, 1977 through September 30, 1978) and Percentage Rental Report, dated October 1, 1979 (covering the period of October 1, 1978 through September 30, 1979). The reports are attached to the March 11, 1992 Juni Aff. as Ex. 1.

4. Paragraph 41 provides:

   Lessee may assign this Lease and may license and/or sublet all or any part or parts of the demised premises to any lawful retail user except to a promotional discount department store or drug store if either are in operation or being rebuilt due to fire, damage or other casualty at the time Lessee elects to exercise its rights of assignment.

5. A copy of the sublease is attached to the Caliendo Aff. as Ex. C.

and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Howland v. Kilquist,* 833 F.2d 639, 642 (7th Cir. 1987). The factual record on summary judgment consists only of sworn testimony based upon personal knowledge; conclusory allegations, whether contained in pleadings or set forth in affidavits, are excluded. Fed. R.Civ.P. 56(e); Fed.R.Evid. 602; *Koclanakis v. Merrimack Mut. Fire Ins. Co.,* 899 F.2d 673, 675 (7th Cir.1990). The parties have filed cross-motions for summary judgment, agreeing that the issues presented in this action, except for the issue of damages, may be resolved at this stage of the proceedings.

*Applicable Law*

■ In determining the substantive law to apply to this action, this court looks to Wisconsin conflict of law principles. *See Checkers, Simon & Rosner v. Lurie Corp.,* 864 F.2d 1338, 1344 (7th Cir.1988) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–497, 61 S.Ct. 1020, 1021–1022, 85 L.Ed. 1477 (1941)). Wisconsin, however, does not have a specific conflict of law principle regarding lease construction. Plaza submits that Michigan law should apply because that is the subject premise's location.[6] A & P, in its initial brief, relies on Wisconsin law. In its responsive brief, A & P states that Michigan law is in its favor as well, but does not conclude that any particular state law is controlling.

■ The Lease does not specify what law should apply to its construction. With respect to contract law, Wisconsin courts use the "grouping of contacts" principle, whereby the state which has the most significant relationship with the contract supplies the applicable law. *Schlosser v. Allis–Chalmers Corp.,* 86 Wis.2d 226, 239, 271 N.W.2d 879, 885 (1978).[7] Also, a court may apply the law which the parties agree on, if that choice of

law is reasonable. *See Checkers,* 864 F.2d at 1344–1345. Given that A & P apparently has no objection to applying Michigan law, and in applying the grouping of contacts principle,[8] this court concludes that it will apply Michigan law.

*Cross–Motions for Summary Judgment*

Plaza asks this court to find that A & P is obligated to pay the fixed monthly rent as well as "percentage rent" equal to the average of A & P's six highest sales years. Both parties agree that the Lease does not indicate the treatment of percentage rent under the present situation, i.e. where A & P has ceased its operations and sublet the premises.

Plaza argues that the fixed rent alone does not constitute reasonable rent, and therefore A & P has breached an implied covenant to pay reasonable rent. Plaza cites *Bastian v. Albertson's,* 102 Idaho 909, 643 P.2d 1079 (Idaho Ct.App.1982), in support of its proposition.

In *Bastian,* the parties renegotiated a lease following destruction of the leased premises by fire. The original lease provided for fixed rent of $1,000 per month. The lessors did not agree that this amount was sufficient. The parties divided the costs of constructing the new building, and the new lease provided for fixed rent of $1,000 per month or one-and-one-half percent of gross retail sales, computed on a yearly basis, whichever was greater. The lessee paid the percentage rent until it ceased operations prior to the lease's expiration. The lessee then continued to pay the fixed rent, and did not assign the lease or sublet the property. The court ruled that the lessee breached an implied covenant to pay reasonable rent.

This court does not find *Bastian* to be applicable to the present case. First, *Bastian* is not controlling law; if anything, it

---

**6.** Plaza does not, however, cite any Michigan law in support of its motion for summary judgment.

**7.** Factors to consider in making this determination include: (1) place of contracting; (2) place of negotiation; (3) place of performance; (4) place of the contract's subject matter; and (5) the parties' domicile, nationality, place of incor-

poration and place of business. *Schlosser,* 86 Wis.2d at 239 n. 2, 271 N.W.2d 879.

**8.** Consideration of the factors listed in the previous footnote is limited by the record before this court.

may be persuasive. Second, that court's finding is limited because the lessee ceased operations but refused to sublet, and there was evidence that the parties did not contemplate that the fixed rent alone was reasonable rent for the premises.[9]

 It is clear from the Lease's language, and the parties agree, that A & P had the right to sublet to Dunham's. The Lease gives no indication that the parties intended that A & P was required to maintain its operations on the leased premises. Additionally, the Lease provides that

> No representation or warranty has been made herein by LESSEE that the business in the demised premises will amount to any specified volume; nor does LESSEE have any fiduciary relationship with LESSOR not does LESSOR acquire any interest in LESSEE'S business hereby.

(Lease, Rider No. 3.) The Lease's express terms therefore do not support Plaza's position the A & P must pay more than the fixed rent.

Further, "no covenant shall be implied in any conveyance of real estate, except oil and gas leases, whether such conveyance contain special covenants or not." Mich.Comp.Laws § 565.5 (1970). This statute applies to the present lease. *See* Mich.Comp.Laws § 565.35 (1970). As construed by Michigan courts, this statute does not create a per se rule banning implied covenants. *See Carl A. Schuberg, Inc. v. Kroger Co.*, 113 Mich.App. 310, 317 N.W.2d 606, 608–609 (Mich.Ct.App. 1982); *Cinderella Theatre Co. v. United Detroit Theatres Corp.*, 367 Mich. 424, 116 N.W.2d 825, 827 (1962). However, the court stated in *Schuberg* that it is "reluctant to find that the percentage rentals were intended as a form of fixed rent, absent an express agreement to the contrary." *Id.*, 317 N.W.2d at 610. As noted above, the Lease's terms do not support the proposition that A & P must pay percentage rent, regardless of actual sales, once it ceases operations on the leased premises. Plaza gives no support for

its suggestion that this court merely average A & P's sales to arrive at what amounts to an additional fixed rent.

Plaza also argues that parol evidence is admissible to determine whether the fixed rent is reasonable.[10] If there is no inconsistency with the written document, parol evidence is admissible. *Union Oil Co. of Cal. v. Newton*, 397 Mich. 486, 245 N.W.2d 11, 12 (Mich.1976). Plaza argues that it is unreasonable to infer that Midland Venture, the original lessor, did not expect to receive percentage rent. "This proposition [that A & P was obligated to maintain operations or pay more than the fixed rent] is indispensable in order to give effect to the intent of the lessor and Defendant under the Lease and it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it." (Mar. 16, 1992 Br. at 10.) While not finding that it is necessary look beyond the Lease's language, this court notes that the affidavits submitted by A & P make it clear that both Midland Venture and A & P intended that the fixed rent was reasonable rent and that if A & P ceased operations, it would not have to pay percentage rent. (Dec. 23, 1991 Wittbold Aff. ¶¶ 4–6; Jan. 21, 1992 Beale Aff. ¶¶ 4–6.)

Based on the foregoing, this court concludes that defendant A & P is entitled to summary judgment and dismissal of this action.

IT IS THEREFORE ORDERED that plaintiff Plaza Forty–Eight, Inc.'s March 13, 1992 motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that defendant The Great Atlantic & Pacific Tea Company, Inc.'s March 13, 1992 motion for summary judgment is GRANTED and this action is DISMISSED.

---

9. Plaza states that it has the burden to show a disparity between fixed rent and fair rental value in order to imply a covenant. Plaza has not met this burden.

10. Plaza does not, however, submit any *evidence*, but rather hypothesizes regarding the parties' intentions.