**PLAZA ASSOCIATES, a Minnesota general partnership, Appellant,**

v.

**UNIFIED DEVELOPMENT, INC., a Minnesota Corporation, et al., Defendants,**

**Walgreen Company, an Illinois corporation, Respondent.**

No. C6-94-1227.

Court of Appeals of Minnesota.

Dec. 13, 1994.

Review Denied Jan. 25, 1995.

Frederick A. Dudderar, Jr., Hanft, Fride, O'Brien, Harries, Swelbar & Burns, P.A., Duluth, for appellant.

Joseph J. Roby, Jr., Johnson, Killen, Thibodeau & Seiler, P.A., Duluth, for respondent.

Considered and decided by KLAPHAKE, P.J., and CRIPPEN and RANDALL, JJ.

## OPINION

CRIPPEN, Judge.

Appellant Plaza Associates, Inc., challenges the trial court's summary judgment for respondent Walgreen Company in appellant's suit for declaratory judgment to find in its lease with Walgreen an implied covenant by Walgreen to continuously operate a drugstore on appellant's premises for the duration of the lease. We affirm.

### FACTS

In 1951 appellant and Walgreen entered into a 20–year lease in which Walgreen agreed to rent space in a shopping center which appellant was building and to use the premises

> for a drugstore, including the right, at Tenant's option, to install a soda fountain and to serve food and to keep and deal in all kinds of merchandise as are now or may hereafter be kept or dealt in by Tenant in any of its stores or by drugstores generally.

The lease provided for the opening of the Walgreen store in the shopping center:

> Tenant shall open its store for business in the leased premises within a reasonable time, but not later than 60 days after possession is delivered * * *; but Tenant

shall have no liability for failure to open its store within said period, except that rent shall commence as of the date its store should have been opened.

The lease gave Walgreen the exclusive right to operate a drugstore in appellant's shopping center. Walgreen could assign or sublet the leased premises for use as a drugstore without the consent of Duluth Plaza. The lease provided for a fixed base rent of $708.33 per month plus a percentage rent equivalent to the amount by which three percent of Walgreen's cash receipts from sales exceeded the annual fixed rent.

The parties renegotiated the original lease in 1970 to provide an increase in base rent from $708.33 to $1000 per month. In 1980 they again renegotiated and extended the lease term through 1998, apparently accommodating Walgreen's intent to move its store to a larger location within the same mall. Walgreen was to complete the remodeling of the new premises within six months and to then open for business, provided:

> Tenant's obligation to remodel and open for business in said new premises shall be subject to extension * * *; but Tenant shall have no liability for failure to open its store in said new premises, except for the payment of rent, allowing for delays as herein provided.

The 1980 lease modification increased Walgreen's fixed base rent to $6,666.66 per month upon taking possession of the new premises and continued to require percentage rent. Walgreen operated its business on these premises until January 1992, when it moved its drugstore operation out of the shopping center to a location across the street. Walgreen has left the premises vacant but has continued to pay the fixed base rent of $6,666.66 per month.

After Walgreen moved across the street, appellant sought a declaratory judgment that the lease contained a covenant which required Walgreen to use good faith efforts to continue operating its business on the premises for the duration of the lease, and stated

a claim for money damages caused by Walgreen's departure. Both parties moved for summary judgment and the district court granted Walgreen's motion.

## ISSUE

Do the circumstances of this case permit a conclusion that Walgreen made an implied covenant to continue operating a drugstore on appellant's premises through 1998?

## ANALYSIS

■ The construction and effect of a contract is a question of law. *Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 66 (Minn.1979). As such, this court need not defer to the trial court's conclusion and may review the issue de novo. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

### 1. *Implied Covenants in General*

■ As a general rule, the law does not favor implied covenants. *Walgreen Ariz. Drug Co. v. Plaza Ctr. Corp.,* 132 Ariz. 512, 647 P.2d 643, 646 (Ct.App.1982); *Keystone Square Shopping Ctr. Co. v. Marsh Supermarkets, Inc.,* 459 N.E.2d 420, 423 (Ind.Ct. App.1984) (citing *Sheets v. Selden,* 74 U.S. (7 Wall.) 416, 19 L.Ed. 166 (1868)). The courts will imply a covenant if necessary to effectuate the intent of the parties. But "the implication must result from the language employed in the instrument or be indispensable to carrying the intention of the parties into effect." *Closuit v. Mitby,* 238 Minn. 274, 282, 56 N.W.2d 428, 432–33 (1953).

### 2. *Implied Covenants to Continue Operations*

■ The question of whether a commercial lease implies a covenant of continuous operation for a specific use is one of first impression in Minnesota, but numerous cases in other jurisdictions have refused to imply this covenant. They base this approach on the general disfavor for implying terms into a contract that has been negotiated between

two parties. *Walgreen Ariz. Drug Co.*, 647 P.2d at 646. Courts are reluctant to impose the burden of a continuous operation clause in the absence of express language because it may "require the lessee to continue operating a business for a long period of time even if that business is incurring substantial losses." *Sampson Inv. v. Jondex Corp.*, 176 Wis.2d 55, 499 N.W.2d 177, 181 (1993).

### 3. *Existence of Implied Operating Covenant in the Present Case*

■ There are numerous factors in this case that demonstrate the trial court did not err in refusing to imply a covenant for continuous operations in the lease between appellant and Walgreen.

■ (a) First, the implication of an operating covenant is less likely where the tenant is paying a "substantial" base rent and a relatively smaller part of the rent as a percentage of gross receipts. *See Carl A. Schuberg, Inc. v. Kroger Co.*, 113 Mich.App. 310, 317 N.W.2d 606, 609 (1982). Since the 1980 modification, the annual percentage rent paid by Walgreen gradually increased from zero in the first few years following the modification to approximately 6 percent of total rent in 1985, 15.5 percent in 1986, 24 percent in 1987, 30.5 percent in 1988, 38 percent in 1989, 43 percent in 1990 and 46 percent in 1991. Walgreen's base rent under the 1980 modification is $6666 per month. Appellant offers no evidence that Walgreen's base rent is not substantial and the percentage rent paid by Walgreen always consisted of the smaller portion of the rent.

(b) Moreover, base rent is "substantial," and thus an implied covenant less likely, if there is a correlation between the base rent and the fair market value of the lease at the time of its execution. *See Carter v. Safeway Stores, Inc.*, 154 Ariz. 546, 744 P.2d 458, 460 (Ct.App.1987); *Carl A. Schuberg*, 317 N.W.2d at 610. It appears that the base rent paid by Walgreen under the 1980 modification reflected the existing market value. In the lease year prior to the modification, Walgreen paid $20,177 in percentage rent, which

constituted 64 percent of its rent liability. Walgreen's fixed base rent under the 1980 modification was raised from $1000 per month to $3,333.33 per month until Walgreen took over the new premises, and $6,666.66 thereafter. In the two years following the rent increase to $6,666.66, Walgreen paid no percentage rent. This evidence suggests that the base rent was adjusted in the 1980 modification to reflect current market rates. In addition, appellant's managing partner who negotiated the lease testified that the base rent under its lease with Walgreen approximated fair market value.

■ (c) The active and extensive negotiation of a lease by sophisticated parties also weighs against finding an implied covenant in a lease "since the parties were free to include whatever provisions they wished." *Thompson Dev. Inc. v. Kroger Co.*, 186 W.Va. 482, 413 S.E.2d 137, 141 (1991); *see also Keystone Square*, 459 N.E.2d at 423 (refusing to imply an operating covenant where the parties occupied relatively equal bargaining positions; neither party was a novice in lease negotiations; and the lease was a sophisticated document using clear, precise language covering myriad details regarding the parties' relationship). There is no evidence that Walgreen and appellant were in unequal bargaining positions in negotiating their lease agreement or that either was a novice in lease negotiations. Appellant's managing partner testified that he has negotiated about 275 commercial leases as a tenant and "several dozen" as a landlord and that he is familiar with express operating covenants. Moreover, the negotiated lease, as well as the subsequent modifications, are sophisticated documents containing many details that are special to the relationship between the parties. These facts weigh against finding that the parties intended the lease to include an operating covenant because they could easily have done so with an express provision.

■ (d) The failure of a landlord to use an express operating covenant where it has included the covenant in the lease of other tenants further weighs against finding an

implied operating covenant because it makes clear that the landlord knew how to employ such a clause. *See Carl A. Schuberg*, 317 N.W.2d at 610. Appellant inserted an express operating covenant into the lease of another tenant just one and a half years before entering into the 1980 modification with Walgreen.

■ (e) A provision in a lease giving a tenant broad assignment or sublease rights is another factor preventing the implication of an operating covenant. The express right of a tenant to assign or sublet and vacate the premises is inconsistent with an implied obligation to remain and do business. *Sampson Inv.*, 499 N.W.2d at 182. In the present case, Walgreen had the right under the lease to freely assign or sublet its premises to others "for use as a drugstore." Even if limited to the same use, the right to sublet or assign tends to negate an implied covenant. *See Keystone Square*, 459 N.E.2d at 423 (implied covenant not found where tenant operating a grocery store only had right to assign or sublet the premises for the same use). Thus, Walgreen's right to sublet or assign the premises without appellant's permission, even though limited to other drugstores, is inconsistent with an implied obligation that Walgreen remain and do business.

■ (f) Finally, an operating covenant is less likely to be implied where, as here, there is no language detailing the scope of the business operation or the identity of the operator. We do not find compelling appellant's assertion that Walgreen's promise to use the premises as a "drugstore only" requires a finding of an implied covenant to continuously operate a drugstore on the premises. Rather, we adopt the reasoning of the Wisconsin Supreme Court which has recently stated that use clauses give tenants "two options under a lease: (1) refrain from using the premises; or (2) use the premises [as specified]." *Sampson Inv.*, 499 N.W.2d

at 180. The use clause in the present lease does not require Walgreen to operate a drugstore on the premises but instead limits its use of the premises to a drugstore.

■ We are also not persuaded by appellant's · assertion that Walgreen's exclusive right to operate a drugstore in the mall compels finding an implied operating covenant. The fact that appellant agreed not to allow any other drugstores in the mall does not indicate an implied covenant by Walgreen to use the space for the full term of the lease. *See Kroger Co. v. Bonny Corp.*, 134 Ga.App. 834, 216 S.E.2d 341, 343 (1975) (noncompete clause not a basis for implying operating covenant); *Carl A. Schuberg*, 317 N.W.2d at 610 (rejecting noncompete clause as basis for implying operating covenant).

■ · Moreover, we do not find the economic interdependence theory advanced by appellant compelling because economic interdependence in cases of large tenants in shopping malls inevitably exists. Parties entering into such leases are well aware of this interdependence and capable of specifically expressing their desires on the subject so that it can be fully considered by both parties. *See Walgreen Ariz. Drug Co.*, 647 P.2d at 647–48.

Appellant stresses that implying a covenant is necessary because of the language regarding the opening of the operation. We disagree, and we find that this clause is substantially weakened by the language that opening was subject to the alternative penalty of paying rent.

■ Appellant adds that an implied covenant should be found because Walgreen had an obligation to exercise good faith and to use its best efforts to continue business operations in the leased premises. Respondent contends that this argument was not properly presented below [1] and that this is a common law obligation that has no applica-

---

1. Respondent argues that appellant is precluded from raising this argument because it did not make it to the trial court. "Generally, the failure

to raise an issue before the trial court prevents this court from considering the issue on appeal." *Spinnaker Software Corp. v. Nicholson*, 495

tion in landlord and tenant law. Whether or not it has any bearing, it is not important in this case because there is no evidence that Walgreen acted in bad faith in moving its store across the street.

## DECISION

We find merit in the trial court's analysis and uphold its decision that no implied covenant of continuous operations existed in the lease between appellant and Walgreen.

**Affirmed.**

N.W.2d 441, 445 (Minn.App.1993), *pet. for rev. denied* (Minn. Mar. 30, 1993). A party is not precluded, however, from making a new argument on appeal for the proposition raised at the time of trial.