Kathryn E. DUSENBERY,
M.D., Respondent,

v.

William K. HAWKS, et al., Appellants,

Malkerson Gunn Martin,
LLP, Defendant.

A16-0961

Court of Appeals of Minnesota.

Filed April 10, 2017

S. Steven Prince, Grell Feist Prince PLC, Minneapolis, Minnesota (for respondent)

Ronald H. Groth, Minneapolis, Minnesota (for appellants)

Considered and decided by Hooten, Presiding Judge; Reilly, Judge; and Smith, Tracy M., Judge.

## OPINION

Hooten, Judge

In this multiparty litigation, the district court granted summary judgment in favor of respondent lender, determining that with respect to loan collateral, lender's security interest has priority over appellant bailee-in-possession's lien interest. The district court also granted summary judgment for lender with respect to lender's breach of contract claim against appellant borrower and developer. Appellants challenge the district court's grant of lender's motion for summary judgment. We reverse the district court's priority determination, and remand for further proceedings consistent with this opinion. However, we affirm the district court's grant of summary judgment with respect to lender's breach of contract claim against borrower.

## FACTS

This priority dispute arises out of a loan used to finance a proposed hydroelectric plant (the project). Appellants William K. Hawks and Crown Hydro, LLC, (collectively, Crown Hydro), developer of the project, own two generators (the collateral) at issue in this litigation. Respondent Kathryn E. Dusenbery, M.D., is a creditor of the project.

In December 2006, Crown Hydro and appellant Randal C. Olson entered into a storage agreement in which Crown Hydro agreed to pay Olson $2,000 a month to store the collateral and to maintain it by rotating the generator shafts each month. Olson stored the collateral in a garage at his residence in Jordan, Minnesota. In June 2007, Olson sold the Jordan residence to appellants Jason and Sheila M. Pelowski, but retained a leasehold interest in the garage. For the purposes of this appeal, the parties concede that the collateral has been stored continuously at the Jordan residence in Olson's care since December 2006, and that Olson is currently in possession of the collateral. Olson claims that Crown Hydro owes him at least $137,000 under the storage agreement.

In May 2013, Dusenbery loaned Crown Hydro $250,000 secured by an interest in the collateral (the loan contract). In the security agreement that accompanied the loan contract, Crown Hydro represented to Dusenbery that the collateral was "free and clear of all security interests, liens and encumbrances," except prior lien interests

explicitly stated within the agreement.[1] The security agreement stated that the collateral was located at the Jordan residence. But the security agreement did not indicate that Olson, who was not a party to the loan contract, possessed the collateral. The parties do not dispute on appeal that Dusenbery lacked actual notice of Olson's possession of the collateral.

In June 2013, Dusenbery filed a Uniform Commercial Code (UCC) financing statement with the Minnesota Secretary of State. As a result, Dusenbery had a first priority position with respect to any UCC financing statements regarding the collateral. In June 2014, Crown Hydro defaulted on the loan contract. Dusenbery claims that Crown Hydro owes her at least $393,000 on the loan contract.

Prior to Dusenbery acquiring her security interest, Olson had not filed any documentation with regard to his bailee's lien interest or a UCC financing statement with the secretary of state claiming a security interest in the collateral. In October 2015, Dusenbery sued, alleging breach of the loan contract, claiming the right to possess the collateral, and seeking a declaration that her security interest in the collateral has first priority.

Olson answered with the affirmative defense that his lien had priority over Dusenbery's security interest. Crown Hydro claimed in its answer that it was not in breach, but did not deny that although it had received the $250,000 from Dusenbery, it had failed to make any payments under the loan contract. Crown Hydro alleged

that Dusenbery conspired with Crown Hydro's former attorney to fraudulently induce Crown Hydro to enter into the loan contract in breach of the attorney's fiduciary duty to Crown Hydro. Based on these facts, Crown Hydro alleged that Dusenbery was not "a good faith holder of any debt obligation attributable to Crown Hydro."

Dusenbery moved for judgment on the pleadings under Minn. R. Civ. P. 12.03.[2] The district court granted Dusenbery's motion for judgment on the pleadings with respect to the breach of contract claim against Crown Hydro. The district court reasoned that Crown Hydro admitted that it had failed to make payments on the contract, and that any defenses pleaded by Crown Hydro were either claims in tort that should have been asserted as counterclaims or affirmative defenses of fraud not pleaded with sufficient particularity. The district court denied Dusenbery's motion for judgment on the pleadings with respect to possession of the collateral and priority of her security interest over Olson's lien interest.

In March 2016, Dusenbery moved for summary judgment, seeking a judicial determination that her security interest in the collateral was senior to all other interests in the collateral and an entry of final judgment against Crown Hydro for the amount outstanding on the loan contract. The district court granted Dusenbery's summary judgment motion in full. Olson and Crown Hydro now appeal.

---

1. After executing the loan contract, Crown Hydro satisfied one prior lien on the collateral, and Dusenbery and Crown Hydro reached a subordination agreement with a third-party holder of the other prior lien described in the security agreement.

2. Dusenbery also moved to strike portions of Crown Hydro's answer under Minn. R. Civ. P.

12.06. The district court granted Dusenbery's motion to strike as to the portion of Crown Hydro's answer, labeled as an affirmative defense of fraudulent inducement, alleging fraud perpetrated through an undisclosed personal relationship between Dusenbery and Crown Hydro's former attorney. It denied Dusenbery's motion to strike in all other respects.

## ISSUES

I. Did the district court err in prioritizing Dusenbery's security interest over Olson's bailment lien?

II. Did the district court err in granting Dusenbery's summary judgment motion on her breach of contract claim against Crown Hydro?

## ANALYSIS

### I.

The district court, in granting summary judgment, determined that Dusenbery's security interest had priority over Olson's bailment lien. Appellate courts review a district court's summary judgment decision de novo, determining "whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). The district court determined, and we agree, that Minn. Stat. § 514.18 governs this priority dispute. The application of section 514.18 to the priority contest between Olson's lien interest and Dusenbery's security interest is a question of law we review de novo. *See id.*

In priority disputes between security interests, the first to file or perfect has priority. Minn. Stat. § 336.9-322(a)(1) (2016). But a party in possession with a statutory lien has priority over all security interests, regardless of date of filing, unless the statute creating the lien "expressly provides otherwise." Minn. Stat. § 336.9-333(b) (2016).

Section 514.18, which governs lien interests in personal property, provides:

Subdivision 1. **Mechanics' lien on personal property.** Whoever, at the request of the owner or legal possessor of any personal property, shall store or care for [the property] . . . shall have a lien upon such property for the price or value of such storage . . . and the right to retain possession of the property until such lien is lawfully discharged.

Subd. 2. **Nonpossessory lien; notice.** Notwithstanding the voluntary surrender or other loss of possession of the property on which the lien is claimed, the person entitled thereto may preserve the lien upon giving notice of the lien at any time within 60 days after the surrender or loss of possession, by filing in the appropriate filing office under the Uniform Commercial Code, Minnesota Statutes, section 336.9-501 a verified statement and notice of intention to claim a lien. The statement shall contain a description of the property upon which the lien is claimed, the work performed or materials furnished and the amount due.

Subd. 3. **Priority; security; interest; foreclosure.** The lien shall be valid against everyone except a purchaser or encumbrancer in good faith without notice and for value whose rights were acquired prior to the filing of the lien statement and who has filed a statement of interest in the appropriate filing office. The lien shall be considered a security interest under the Uniform Commercial Code and foreclosure thereon shall be in the manner prescribed for security interests under article 9 of the Uniform Commercial Code.

In addressing Dusenbery's motion for judgment on the pleadings, the district court determined that section 514.18 controlled and stated that "[u]nder that statute, Olson's lien on the collateral would have priority over Dr. Dusenbery's security interest if Dr. Dusenbery had notice of the lien." The district court denied judgment on the pleadings because the pleadings left open the question of whether Dusenbery had prior notice of Olson's lien.

But the district court granted summary judgment because Olson presented no evidence of a genuine issue of material fact as to whether Dusenbery had such notice.[3]

As a bailee-in-possession, Olson's lien interest is governed by section 518.14, subdivision 1. Thus, as a statutory lien, Olson's lien interest would have priority over Dusenbery's security interest, unless another part of section 518.14 "expressly provides otherwise." Minn. Stat. § 336.9-333(b). While it is clear that subdivision 3 expressly limits the priority of some bailment liens, Olson asserts that the limiting language of subdivision 3 applies only to the nonpossessory lien created in subdivision 2, not the bailment lien governed by subdivision 1. Dusenbery argues that the district court was correct in determining that the limiting language in subdivision 3 applies to both possessory and nonpossessory bailment liens. We find Olson's argument more persuasive.

Subdivision 3 indicates that its restrictions apply only to a nonpossessory lien created in subdivision 2. Its first sentence provides that "[t]he lien" shall be valid against all except a party who purchased or encumbered the property in good faith and without notice "whose rights were acquired prior to the filing of *the lien statement*." Minn. Stat. § 514.18, subd. 3 (emphasis added). This implies that the limitations of subdivision 3 apply only to bailment liens that require the filing of a lien statement.

A brief history of bailment liens suggests that a bailee-in-possession lien interest governed by subdivision 1 need not file a lien statement, but the nonpossessory bailment lien created by subdivision 2 does require a lien statement. At common law, one who contributed to the improvement of personal property had a lien against that property as to the value of the improvement, so long as he or she remained in possession. *See Green v. Farmer* (1768) 98 Eng. Rep. 154, 159 (determining that dyer of cloth had lien on possessed cloth only for amounts owed under current transaction, not for unpaid debts of previous transactions).

Minnesota codified this common law principle in 1905. *See* Minn. Rev. Laws § 3521 (1905). The 1905 version of the bailment lien statute is materially identical to the 2016 version of section 514.18, subdivision 1, except that the 1905 version concluded with the following sentence: "But a voluntary surrender of possession shall extinguish the lien herein given." *Id.*

From decisions issued between the codification of the possessory bailment lien and the addition of subdivisions 2 and 3, we can draw three additional conclusions. First, continuous possession of the personal property was required to maintain the lien. *See, e.g., In re Express Fruit & Produce, Inc.*, 16 B.R. 366, 368 (Bankr. D. Minn. 1982) ("In order to maintain a possessory lien under [Minn. Stat.] § 514.18, the creditor must retain possession of the personal property upon which the work was done."), *aff'd sub nom. Leonard v. Dahlke Trailer Sales & Leasing Co.*, No. 4-82-103, 1982 WL 171055 (D. Minn. Aug. 4, 1982). Second, the statutory bailment lien automatically arises when the owner of personal property entrusts that property to a bailee

---

**3.** Dusenbery asserts Olson has forfeited any argument on appeal that section 514.18, subdivision 3, does not apply because in opposition to Dusenbery's summary judgment motion, Olson only argued Dusenbery had notice of his lien. However, in his answer, Olson claimed his lien had priority. Generally, a party may not raise new issues on appeal, but a party is "not precluded ... from making a new argument on appeal for the proposition raised at the time of trial." *Plaza Assoc. v. Unified Dev., Inc.*, 524 N.W.2d 725, 731 (Minn. App. 1994).

for storage or repairs, and no filing ·is required. *See In re Serbus*, 53 B.R. 187, 188–89 (Bankr. D. Minn. 1985) (observing that under section 514.18, one who stores corn at request of owner has statutory bailment lien on that corn, and "[t]here is no need to file any documentation in regard to such a lien. The lien simply arises upon storage"). Third, the statutory bailment lien has priority over previously granted security interests on personal property. *See Stebbins v. Balfour*, 157 Minn. 135, 137, 195 N.W. 773, 774 (1923) (holding that the bailee's lien "is intended to be superior" to previously granted security interests).

In 1984, the legislature removed the final sentence of subdivision 1, requiring continuous possession, and added subdivisions 2 and 3. 1984 Minn. Laws ch. 479, § 1, at 439–40. Subdivision 2 enables a bailee in possession of personal property who loses possession to convert his or her bailment lien into a nonpossessory lien by filing a lien statement in the same manner as a secured party. Minn. Stat § 514.18, subd. 2. The explicit language of subdivision 2 presupposes a bailment lien under subdivision 1, allowing that "the person entitled [to a bailment lien] *may*" file a lien statement within 60 days if that person wishes to "preserve the lien" after possession is lost. *Id.* (emphasis added).

In sum, no lien statement was required at common law for the type of bailment lien governed by section 514.18, subdivision 1. Following the addition of subdivision 2, a lien statement is required to preserve a bailment lien only when a bailee-in-possession of the personal property loses possession. The limiting language in subdivision 3, which requires the filing of a lien statement, therefore must necessarily affect only the priority of a nonpossessory lien created by subdivision 2.

Our interpretation is further reinforced by the fact that, before the adoption of subdivisions 2 and 3, a bailment lien had priority over a security interest in that property. without regard to whether the secured party had actual notice of the bailment lien, because the secured party was charged with constructive notice of the bailee's interest in the property. *See Clark v. Corser*, 154 Minn. 508, 510, 191 N.W. 917, 918 (1923) ("Possession of property is always full constructive notice to the world of the rights of the possessor."). As no statute explicitly or by necessary implication abrogates this common law constructive notice principle, we assume it remains. *See Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000).

■ Because the limiting language of section 518.14, subdivision 3, applies only to the nonpossessory lien created by subdivision 2, the possessory lien governed by subdivision 1 is subject to the default rule of possessory lien priority. That is, a party currently in possession with a statutory lien has priority over all security interests, regardless of date of filing. Minn. Stat. § 336.9-333(b).

Accordingly, by determining that Dusenbery's security interest has priority over Olson's bailment lien because Dusenbery lacked notice of Olson's lien under subdivision 3, the district court erred as a matter of law. Because the district court improperly narrowed the priority dispute on summary judgment to whether Dusenbery had actual notice of Olson's lien under subdivision 3, the factual record as to whether Olson is currently in possession of the collateral is incomplete. Assuming that, as conceded by the parties for the purposes of this appeal, Olson is currently in possession of the collateral, Olson's lien has priority. We therefore reverse the determination that Dusenbery's security interest is

senior, and remand for further proceedings consistent with this opinion.

## II.

■■■■ Crown Hydro argues that the district court erred in granting summary judgment for Dusenbery because the district court failed to consider Crown Hydro's fraudulent inducement affirmative defense.[4] We disagree.

The district court determined that the relevant part of Crown Hydro's answer does "not provide a viable affirmative defense apart from fraudulent inducement, [and] the allegations do not allege fraudulent inducement with the requisite particularity." The district court also stated that Crown Hydro's affirmative defense could be construed as a counterclaim for aiding and abetting a breach of fiduciary duty, but Crown Hydro did not adequately plead a "basis for any counterclaim." Whether Crown Hydro's answer sets forth a legally sufficient claim for relief is a matter of law, which we review de novo. *See Williams v. Bd. of Regents*, 763 N.W.2d 646, 651 (Minn. App. 2009) (quotation omitted). In so doing, we must "take the facts alleged in the [answer] as true and draw all inferences" in Crown Hydro's favor. *Id.*

The relevant part of Crown Hydro's answer alleged that, at the time of the loan transaction, Crown Hydro's former attorney and Dusenbery were involved in a personal relationship, which its former counsel failed to disclose to Crown Hydro in breach of his fiduciary duties. The answer also alleged that, in further breach of his fiduciary duties, its former attorney conspired with Dusenbery to fraudulently induce Crown Hydro to borrow money from Dusenbery specifically, and that the sole purpose of the transaction was to put Dusenbery in a position of financial leverage over Crown Hydro. This, according to Crown Hydro, would allow the conspirators to "defraud, intimidate, threaten, and force Crown Hydro ... to sell and turn over control" of the project to Dusenbery.

Crown Hydro's answer does not point to any specific provision of the loan contract that is fraudulent or unfairly benefits Dusenbery, or to any specific misrepresentation made by Dusenbery or its former counsel. Crown Hydro also does not dispute that it has made no payments on the loan contract.

We fail to see how these allegations identify any compensable injury. By its nature, a loan gives every unpaid lender some financial leverage over the borrower. Regardless of whether the controversial pleading is considered to be a fraudulent inducement affirmative defense or a counterclaim for aiding and abetting a breach of fiduciary duty, either requires Crown Hydro to plead a compensable injury. *See Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009) (outlining elements of fraudulent inducement claim, including showing of "pecuniary

---

4. The district court also struck the part of Crown Hydro's answer containing its fraudulent inducement affirmative defense, determining that it was an "insufficient defense, immaterial and scandalous." It is proper for a district court to strike as immaterial any part of a pleading which "neither states a cause of action nor assists other parts in so stating." *Hayward Farms Co. v. Union Sav. Bank & Tr. Co.*, 194 Minn. 473, 474, 260 N.W. 868, 869 (1935). Further, any material stricken as scandalous must also be immaterial or irrelevant. *See Goodrich v. Parker*, 1 Minn. 195, 198, 1 Gil. 169, 172 (1854) ("But a matter must be [irrelevant] in order to be scandalous, for however scandalous in its nature it may be, if relevant it cannot be expunged as scandalous."). We cannot agree with the district court that Crown Hydro's allegations are irrelevant. Thus, while not dispositive of this appeal, we conclude that the district court erred by striking the relevant parts of Crown Hydro's answer as immaterial or scandalous.

damages"); *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 185–86 (Minn. 1999) ("[A]ll who actively participate in any manner in the commission of a tort, or who ... aid, or abet its commission, ... are jointly and severally liable for *the resulting injury*." (emphasis added) (quotations omitted)). Thus, whether treated as a counterclaim or an affirmative defense, the allegations in Crown Hydro's answer were insufficiently pleaded.

Accordingly, we affirm the district court's grant of summary judgment for Dusenbery on her breach of contract claim against Crown Hydro.

## DECISION

Olson's bailment lien, governed by Minn. Stat. § 514.18, subd. 1, has priority over Dusenbery's security interest without regard to whether Dusenbery had notice of Olson's lien when Dusenbery's security interest was created. We reverse the district court's determination that Dusenbery's security interest is senior, and remand for further proceedings consistent with this opinion. We affirm the district court's grant of summary judgment in favor of Dusenbery on her breach of contract claim against Crown Hydro.

**Affirmed in part, reversed in part, and remanded.**